UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                 :         05 Civ. 8626 (GEL)

IN RE REFCO, INC. SECURITIES LITIGATION   :

                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### AFFIDAVIT OF STEPHEN J. FEARON, JR. IN SUPPORT
### OF MOTION FOR CLASS CERTIFICATION AND ENTRY
### OF PRE-TRIAL ORDER FOR THE CUSTOMER CLASS ACTIONS

STATE OF NEW YORK    )
                        ) ss:
COUNTY OF NEW YORK  )

      I, Stephen J. Fearon, Jr., being duly sworn, depose and say the following under the penalties of perjury:

      1.  I am one of the attorneys for Plaintiff in this action and I submit this Affidavit in support of Plaintiff's motion seeking certification of the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

      2.  Attached as Exhibit A is a true and correct copy of the Complaint.

      3.  Attached as Exhibit B is a true and correct copy of the firm resume of Squitieri & Fearon, LLP.

_____
Stephen J. Fearon, Jr.

Sworn to before me this
20th day of January, 2006

_____
Notary Public

CATHIAN SIMPSON
Notary Public, State of New York
No. 01SI6033425
Qualified in Kings County
Commission Expires 11/15/2009

**EXHIBIT A**

Stephen J. Fearon, Jr. (SF-8119)
Lee Squitieri (LS-1684)
SQUITIERI & FEARON, LLP
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CASTEL

---

AMERICAN FINANCIAL INTERNATIONAL
GROUP – ASIA, LLC, individually and on
behalf of all others similarly situated,

                       Plaintiff,

            -against-

REFCO, INC., REFCO F/X ASSOCIATES, LLC,
PHILLIP R. BENNETT, and DOES 1
THROUGH 50,

                    Defendants.

---

X

**05 CV 8988**

Case No.:

**CLASS ACTION COMPLAINT**



X

Plaintiff, AMERICAN FINANCIAL INTERNATIONAL GROUP – ASIA, LLC

("Plaintiff"), by and through its attorneys, alleges the following upon information and belief,

except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.

Plaintiff's information and belief are based upon its attorneys' investigation, including its

attorneys' review and analysis of: (a) filings made by Refco, Inc. ("Refco" or the "Company")

with the United States Securities and Exchange Commission ("SEC"); (b) the complaints filed in

securities class actions involving Refco; (c) a complaint filed by the United States Attorney's

Office for the Southern District of New York ("United States Attorney") against Defendant

Phillip R. Bennett; (d) press releases, public statements, news articles, and other publications disseminated by or concerning Refco; and (e) other publicly available information about Refco.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) and supplemental jurisdiction over Plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to Plaintiff's federal claims that they form a part of the same case or controversy between the parties.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391. The acts, events, and conduct alleged in this Complaint occurred in substantial part in this District. Defendants have substantial operations and do significant business within this District and are subject to personal jurisdiction in this District.

## NATURE OF THE ACTION

3. This is a class action on behalf of Plaintiff and all other persons who traded currencies through, or had currency trading accounts with, Refco F/X Associates, LLC ("RefcoFX") from August 11, 2005 continuing through the present, and who have been damaged.

4. Plaintiff and the other Class members have traded currencies through RefcoFX and have been damaged by a massive fraud that defendant Refco's Chairman and Chief Executive Officer ("CEO"), Phillip R. Bennett ("Bennett"), orchestrated in order to complete an initial public offering of Refco stock on August 10, 2005.

5. On October 10, 2005, only two months after that initial public offering, Refco disclosed that an internal company review had uncovered a $430 million receivable owed to the Company by an entity controlled by defendant Bennett. The Company had not disclosed the

receivable or included it as a related party transaction in the Company's prior period financial

statements or its Registration Statement and Prospectus (the "Registration Statement") filed in

connection with Refco's August 11, 2005 initial public offering (the "IPO").

6.  According to the press release, the debt was transferred periodically to the entity

Bennett controlled, and the debt was then shown on Refco's books as a receivable from the

Bennett entity rather than from the original debtor. At the end of each financial reporting period,

the debt was transferred again from the account of the entity controlled by Bennett to a third

party's account.

7.  Bennett took an indefinite leave of absence at the request of Refco's Board of

Directors when the news broke on October 10, 2005, was arrested the next day and was charged

with securities fraud by the United States Attorney. The SEC also is conducting an inquiry into

the matter.

8.  In a supplemental press release on Tuesday, October 11, 2005, Refco further

disclosed that the receivable consisted in large part of an uncollectible debt dating back at least to

1998.

9.  Refco disclosed further that the Company's financial results for fiscal years 2002,

2003, 2004 and 2005, and the first quarter of fiscal 2006, which began on March 1, 2005,

"should no longer be relied upon."

10. Following Refco's October 10, 2005 announcement, the Company's stock

plummeted, wiping out more than $1 billion in market capitalization.

11. Trading in Refco's stock was halted for most of Tuesday, October 11, 2005, and,

when trading resumed, the stock continued to fall, closing at $10.85 per share on October 12,

2005.

12. On October 13, 2005, trading was again suspended after the stock dropped an additional 27% to $7.90 in pre-market activity.  Since then, Refco's stock has been suspended from trading.

13. On October 17, 2005 Refco, RefcoFX, and various Refco affiliates filed a voluntary petition for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York.

14. On the same day, Defendant RefcoFX notified its customers that they could no longer make withdrawals from or deposits to their currency trading accounts.

15. As a result, Refco's trading customers were prevented from depositing funds to maintain appropriate account balances and were forced to sell currency positions to avoid RefcoFX from closing leveraged positions automatically.  Furthermore, upon information and belief, RefcoFX closed some trading customers' leveraged positions because those customers were unable to deposit funds to maintain sufficient equity in their accounts.  Once customers' equity fell below the margin required to maintain their open positions, RefcoFX automatically closed all open currency positions causing those customers to incur the corresponding losses that would have otherwise been prevented if RefcoFX allowed those customers to deposit funds into their accounts.

16. Trading customers incurred transactional costs and commissions associated with RefcoFX's automatically closing customers' open positions and associated with being forced to close positions to avoid RefcoFX from automatically selling customers' positions.

17. After customers' positions were sold, customers incurred additional transactional costs and commissions associated with having to unnecessarily set new positions.

4

18. Plaintiff and other members of the Class who contacted RefcoFX on or about October 18, 2005 heard a recorded message about the freeze on their accounts.  That message stated that customers' accounts were frozen and there was no definite time period within which the freeze would be lifted, but that it could last "weeks" or "months."

### PARTIES

19. Plaintiff, AMERICAN FINANCIAL INTERNATIONAL GROUP – ASIA, LLC is a Delaware limited liability company which trades currencies through its account with RefcoFX and has been damaged by Defendants' wrongful conduct.

20. Refco is a financial services organization with operations in fourteen countries.  Refco serves as a clearinghouse for derivatives transactions and, in addition to being the largest independent futures broker in the United States, is among the most active futures and commodities brokers on several exchanges.  Refco is a Delaware corporation and maintains its principal place of business at One World Financial Center, 200 Liberty Street, Tower A, New York, New York.  It is the parent of RefcoFX.

21. RefcoFX is a Delaware limited liability corporation, authorized to do business in New York, with its principal place of business at One World Financial Center, 200 Liberty Street, Tower A, New York, New York.  RefcoFX is the currency trading arm of Refco.  Throughout the Class Period defendants touted RefcoFX as offering "the most comprehensive variety of basic, advanced and professional charting packages to meet the demand of all FX traders."  On its web site, www.refcofx.com, Defendants represented that "institutions trust Refco with billions, who do you trust?"  The web site proclaimed that Refco has "40 years in the business," has "over 200,000 customers world-wide," and has "over 20 billion [dollars] in assets."

Defendants also represented on their website that by investing through RefcoFX, the trader will have "complete safety of funds."

22. Defendant Phillip R. Bennett was, at all relevant times, the Chairman and CEO of Refco. Bennett signed the Registration Statement for the IPO and approved and/or made all public statements by defendants during the Class Period.

23. Plaintiff is unaware of the true names and capacities of the remaining Defendants sued in this action by the fictitious names DOES 1 through 50. Plaintiff will amend this Complaint when those names and those capacities are known to Plaintiff. Plaintiff is informed and believes that each of the fictitiously named Defendants is in some manner responsible for the events that have damaged Plaintiff and the Class.

24. At all relevant times, each Defendant was the representative, agent, servant, principal, employee, partner, and joint venturer of each other Defendant.

## SUBSTANTIVE ALLEGATIONS

25. On or about August 10, 2005, Refco's Registration Statement filed in connection with its IPO became effective.

26. Incorporated by reference into Refco's Registration Statement was its IPO Prospectus, which offered 26,500,000 shares of Refco common stock, with anticipated proceeds of $583 million. The Prospectus expressly urged the investing public to rely upon the information in it.

27. Unaware of the internal problems that beset Refco and its affiliates, Plaintiff and other currency traders relied on the materially misleading statements provided by Defendants and opened positions with the Company and paid fees and commissions for trading through RefcoFX.

28. On October 10, 2005, Company officials publicly revealed for the first time that Refco's financial results had been materially misstated and that Refco was owed $430 million in uncollectible debt. This "bad debt" was not revealed as such on Refco's books, but rather, was hidden until October 2005 through a series of transactions involving an entity, Refco Group Holdings, Inc. ("RGHI"), which at all relevant times was controlled by defendant Bennett. The uncollectible debt, which dates back to at least 1998, rose at one point to as high as $545 million. The RGHI receivable was not shown as a related party transaction in the Company's prior period financial statements or its Registration Statement and Prospectus filed in connection with Refco's IPO. Instead, at the end of each financial reporting period, the uncollectible debt was transferred from the RGHI receivable account to the account of an unaffiliated third party.

29. Refco effectuated a series of loan transactions to disguise the related-party nature of the RGHI debt.

30. Bennett, who on October 10, 2005 took an indefinite leave of absence at the request of Refco's Board of Directors, was arrested the next day and charged with securities fraud by the United States Attorney.

31. Throughout the Class Period, Defendants made materially false and misleading statements or failed to disclose material financial and operating information and related party transactions in their public statements. As a result, Plaintiff and the other Class members did not know the risk that they were taking when they set currency trading positions through Refco.

32. Because Defendants failed to disclose the nature of the $430 million debt owed to the Company, the financial and business information that Defendants provided to customers and the market was materially false and misleading because:

7

- Refco's balance sheet reflected inaccurate debt accounting and debt reserves. This, in turn, rendered Refco's operating results inaccurate and misleading and failed to accurately reflect the risk to traders.

- Refco's accounts receivable reporting was inaccurate as a result of the undisclosed true nature of the RGHI debt.

- Defendants assured customers and the market that Refco had managed risk prudently in the past and would continue to do so in the future.

- Defendants failed to disclose the true nature of the debt owed to the Company by RGHI, which was material information and rendered Defendants' public statements materially false and misleading.

- Defendants failed to report accurate historic financial information, rendering these statements an unreliable indicator of Refco's financial viability.

- Defendants' failure to provide accurate financial information misrepresented the underlying value of the Company, the risks of trading through RefcoFX accounts, and the Company's ability to complete trades.

- Defendants failed to disclose the potential affect of the undisclosed debt on the Company's future operating results and its ability to complete trades and service accounts for users of its commodities and currency trading operations.

33. Applicable regulations require registrants to disclose in a registration statement information concerning any transaction of at least $60,000 within the last fiscal year in which an executive of the registrant had a material interest, and all debts of at least $60,000 by an executive of the registrant. At all relevant times, Bennett controlled RGHI. Refco's accounts receivable stated a debt owed to Refco by RGHI of at least $300 million dollars throughout 2005 and should have been disclosed.

34. When Refco publicly announced details of the undisclosed affiliated transactions on October 10, 2005, the Company also disclosed that the market should no longer rely on Refco's financials statements from as far back as fiscal year 2002.

35. Despite Refco's revelations on October 10 and October 11, 2005, RefcoFX assured Plaintiff and other members of the Class that RefcoFX's trading operations and customers' trading accounts would be unaffected.

36. However, on or about October 17, 2005, and continuing after that, RefcoFX advised Plaintiff and other members of the Class who requested to deposit and/or withdraw funds from their currency trading accounts at RefcoFX that they could not do so. RefcoFX further advised that they did not know when customers would be able to resume deposits to and withdrawals from their RefcoFX currency trading accounts.

37. As a result, Plaintiff and the other Class members have been damaged.

## CLASS ALLEGATIONS

38. Plaintiff brings this action on its own behalf and as a class action, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons who traded currencies through, or had currency trading accounts with, RefcoFX between August 11, 2005 and continuing through the present and who have been damaged. Excluded from the Class are: (i) Defendants; (ii) members of the family of each Individual Defendant; (iii) any entity in which any Defendant has a controlling interest; (iv) officers and directors of the Company and its subsidiaries and affiliates; and (v) the legal representatives, heirs, successors or assigns of any such excluded party.

39. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members may only be determined by appropriate discovery, Plaintiff believes that Class members number in the hundreds or thousands. At all relevant times, the RefcoFX website represented that RefcoFX had more than 200,000 trading customers.

40. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all other members of the Class traded through RefcoFX and sustained damages as a result of Defendants' wrongful conduct.

41. Plaintiff will fairly and adequately protect the interests of the other members of the Class and has retained counsel competent and experienced in class action litigation.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for class members to individually seek redress for the wrongful conduct alleged herein.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

      a.      whether Defendants violated laws alleged herein;

      b.      whether Defendants made materially false misstatements or omitted to state material information; and

      c.      whether the members of the Class have sustained damages and, if so, the appropriate measure of such damages.

44. Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action.

45. The names and addresses of the RefcoFX customers who are Class members are available from the Company's records. Notice may be provided to Class members via first class mail using techniques and a form of notice similar to those customarily used in class actions.

10

## COUNT I

### (Fraud And Misrepresentation)

46. Plaintiff repeats and realleges each allegation above.

47. At all relevant times, Defendants misrepresented, omitted, and failed to disclose material facts to Plaintiff and the other members of the Class, including that Refco's financial results were materially misstated and omitted material information, which significantly increased the risk to Plaintiff and the Class of maintaining accounts and executing trades through RefcoFX.

48. Defendants failed to disclose adequate information warning their customers about these risks.

49. Plaintiff and the other Class members justifiably and reasonably relied upon the express and implied representations of material facts made by Defendants and their representatives, principals, employees, partners, joint venturers, agents, and servants.

50. Defendants' misrepresentations, omissions and concealment of material facts were made to induce Class members to rely upon them and to induce Plaintiff and the Class to trade through RefcoFX.

51. Defendants knew or recklessly disregarded the fact that their statements regarding Refco, RefcoFX, and their operations were false, misleading, incomplete, and untrue when made.

52. The uniform misrepresentations, misleading statements, material omissions, and the fraudulent concealment of material facts by Defendants and their representatives, principals, employees, partners, joint venturers, agents, and servants were made with the intent to deceive and defraud, and to conceal the truth about Refco, RefcoFX, and their trading operations.

53. Defendants' uniform misrepresentations, misleading statements, material omissions, and fraudulent concealment of material facts concerning Refco and RefcoFX were made in order to increase Defendants' sales and profits.

54. Plaintiff and the Class had no knowledge of the falsity and incompleteness of Defendants' statements and representations when they initiated trades through RefcoFX and would not have initiated such trades had they known the falsity and incompleteness of Defendants' statements and representations.

55. At all times, Defendants failed to adequately disclose material adverse information regarding Refco's actual financial results and the risks associated with trading through RefcoFX and maintaining accounts with defendants.

56. Defendants were under a duty to disclose the full extent of the problems at Refco and RefcoFX and the risks to customers who traded through RefcoFX. Defendants had sole access to material facts concerning these problems and risks, and knew that customers could not have reasonably discovered Defendants' misrepresentations or omissions.

57. By reason of Defendants' fraudulent concealment, material misrepresentations, misleading statements, and material omissions, Plaintiff and the other Class members have been damaged in an amount to be established at trial.

58. Defendants' omissions were made deliberately, willfully and maliciously to mislead customers about Refco and RefcoFX.

59. Because Defendants' conduct in perpetrating the fraud described above was malicious, willful, wanton, and oppressive, or in reckless disregard of the rights of the Class, the imposition of punitive damages against Defendants is warranted.

## COUNT II

### (Negligence And Negligent Misrepresentation)

60. Plaintiff repeats and realleges each allegation above.

61. Defendants owed a duty to Plaintiff and the Class to use reasonable care in promoting, supplying, and selling Refco's and RefcoFX's trading services and to disseminate truthful information about those trading services.

62. Defendants breached their duty of care, constituting negligence, as follows:

(a)    Defendants omitted and misrepresented material facts about Refco and RefcoFX and, as a result, engaged in a scheme to improperly charge Plaintiff and the Class for RefcoFX's trading services and caused Plaintiff and the Class to incur unnecessary losses;

(b)    Defendants failed to properly promote and sell Refco's trading services;

(c)    Defendants concealed and misrepresented the true charges that would be imposed on customers for using RefcoFX's trading services;

(d)    Defendants failed to adequately inform consumers about the risks associated with trading through RefcoFX;

(e)    Defendants failed to properly market, advertise and promote RefcoFX when they knew or should have known that there would be significant, undisclosed risks associated with trading through RefcoFX.

63. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have been damaged in an amount to be established at trial.

64. Defendants had a duty to exercise reasonable care in the sale and promotion of RefcoFX, including a duty to:

(a)    make truthful statements about Refco and RefcoFX;

13

      (b)     correct omissions and misrepresentations of material fact concerning Refco and RefcoFX; and

      (c)     disclose adverse material facts when making representations of facts.

65. Defendants failed to exercise reasonable care in selling and promoting RefcoFX's trading services because Defendants knew or should have known that they had omitted and misrepresented material facts concerning Refco's financial results and the risks associated with trading through RefcoFX.

66. Defendants breached their duty of reasonable care and duty to disclose material information to Plaintiff and the Class by failing to use reasonable care in the promotion and sale of RefcoFX trading services and failing to provide sufficient disclosures about Refco and RefcoFX.

67. Although Defendants knew or should have known that they were imposing unwarranted and undisclosed risks on customers, Defendants continued to market, promote and sell RefcoFX's trading services unlawfully.

68. Defendants knew or should have known that Plaintiff and the Class would foreseeably suffer damages as a result of Defendants' acts and omissions.

69. Defendants intended that Plaintiff and the Class would rely upon their representations and statements and would rely on Defendants and their representatives, principals, employees, partners, joint venturers, agents, and servants to inform them truthfully, accurately and fully about Refco and RefcoFX, and the risks associated with trading through RefcoFX.

70. At the time of Defendants' misrepresentations, misleading statements and omissions about Refco and RefcoFX, Plaintiff and the Class were ignorant of their falsity and would not have so acted had they known of Defendants' misrepresentations, misleading statements and

omissions.  Plaintiff and the Class relied upon Defendants' superior knowledge and expertise, and justifiably and reasonably relied to their detriment, on Defendants' representations and statements.

71. By virtue of Defendants' negligence and negligent misrepresentations, Defendants have directly, foreseeably, and proximately damaged Plaintiff and the Class in an amount to be established at trial.

72. Defendants have promoted and sold RefcoFX's trading services in a manner that constituted gross, willful, malicious, reckless, and outrageous disregard for the consequences of their actions and omissions.

73. Defendants' actions as described above constitute knowing omission, suppression, or concealment of material facts made with the intent that others would rely upon that concealment, suppression, or omission.

74. As a result, the imposition of punitive damages against Defendants is warranted.

### COUNT III

### (Unjust Enrichment And Restitution)

75. Plaintiff repeats and realleges each allegation above.

76. As a result of their improper acts set forth in this Complaint, Defendants have realized millions of dollars in commissions and fees for RefcoFX's trading services from Plaintiff and the other members of the Class.

77. Defendants obtained these commissions and fees by making false and misleading statements to and withholding information from Plaintiff and the other Class members.

78. If Plaintiff proves the allegations of inadequate and untruthful disclosures, Defendants would stand to be unjustly enriched if they were permitted to retain their ill-gotten

gains. Therefore, Defendants should refund the ill-gotten gains to Plaintiff and members of the
Class.

79. As a result of Defendants' acts and omissions, Plaintiff and the other members of the
Class have suffered ascertainable economic loss, including the charges imposed by Defendants,
for which Defendants are liable to Plaintiff and the Class, plus attorneys' fees and costs.

## COUNT IV

## (Quantum Meruit)

80. Plaintiff repeats and realleges each allegation above.

81. Each Defendant accepted and retained the commissions and fees paid by Plaintiff and
the Class members.

82. Each Defendant is liable to Plaintiff and the Class under quantum meruit for all
damages.

## COUNT V

## (Breach of Contract)

83. Plaintiff repeats and realleges each allegation above.

84. Defendants represented to Plaintiff and the other Class members that Plaintiff and the
Class members would be able to trade unencumbered through RefcoFX and make deposits and
withdrawals to and from their RefcoFX accounts, and that Refco would not close leveraged
positions due to a lack of equity without allowing traders the opportunity to add funds to their
accounts thereby preventing such sales.

85. Instead, Defendants have unilaterally frozen traders' accounts, have prohibited traders
from making deposits to or withdrawals from those accounts, and have forced traders to sell

16

currency positions in order to maintain sufficient equity to avoid RefcoFX from closing

leveraged positions when the equity in their accounts falls below the margin required to maintain

their open positions.  Upon information and belief, RefcoFX closed some traders' leveraged

positions because Defendants prevented the traders from depositing funds and maintaining

sufficient equity to avoid automatic closure of their leveraged positions.

86. Each Defendant is liable to Plaintiff and the Class for the damages incurred as a result

of its unauthorized practices.

87. Each Defendant entered into a contract with each Class member governing the trading

accounts.

88. Each Defendant breached these agreements.

89. Plaintiff and the other Class members have been damaged by each Defendant's

conduct.

## COUNT VI

### (Breach of Warranty)

90. Plaintiff repeats and realleges each allegation above.

91. When Plaintiff and the other Class members opened trading accounts through

RefcoFX and traded through RefcoFX, Defendants made written and verbal statements that were

intended to create demand for Defendants' products and services, but which contained material

misrepresentations and utterly failed to warn about the risks associated with trading through

RefcoFX.

92. Defendants knew or were reckless in not knowing that these representations were

materially false and misleading.

17

93. When Defendants made these express and implied warranties about the trading accounts, Defendants knew the purpose for which those accounts were to be used and warranted them to be in all respects proper for such purpose.

94. Defendants themselves drafted the documents or made the statements upon which these warranty claims are based, and in so doing, defined the terms of those warranties.

95. Defendants' accounts and practices did not conform to Defendants' representations in that Defendants halted Plaintiff's and other Class members' ability to effectively trade through their RefcoFX accounts, and make deposits to and withdrawals from those accounts.

96. Defendants' products and services did not conform to Defendants' promises, descriptions or affirmations of fact and were not adequately promoted or fit for the ordinary purposes for which such products and services are used.

97. Defendants therefore breached their warranties and have damaged Plaintiff and the Class.

## COUNT VII

### (Unfair Competition)

98. Plaintiff repeats and realleges each allegation above.

99. Defendants violated federal rules and regulations as well as other laws by their unfair, unlawful, deceptive, and misleading practices.

100. Plaintiff and the Class have been damaged by Defendants' conduct.

101. Plaintiff and the Class also seek injunctive relief to prevent Defendants from further violating the law, engaging in unfair competition and unfair business practices, and harming consumers.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and declaring Plaintiff to be a proper Class representative.

B.     Awarding rescissory and compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

C.     Granting extraordinary equitable and/or injunctive relief as permitted by law, including attaching, impounding, imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that the Plaintiff and the other members of the Class have an effective remedy

D.     Awarding Plaintiff and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees, and other costs and disbursements; and

E.     Granting such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a jury trial of all issues so triable.

Dated: October 21, 2005

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: _____

Stephen J. Fearon, Jr. (SJ-8119)
Lee Squitieri (LS-1684)
32 East 57th Street - 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile:  (212) 421-6553

KELLER · FISHBACK LLP
Daniel Keller (DK-1300)
62 William Street, 6th Floor
New York, New York 10005
Telephone: (646) 536-2719
Facsimile:  (646) 519-7437

Attorneys for Plaintiff

**EXHIBIT B**

**SQUITIERI & FEARON, LLP**
**Attorneys at Law**
**32 East 57th Street**
**12th Floor**
**New York, New York 10022**
**Tel: 212-421-6492**
**Fax: 212-421-6553**

---

Squitieri & Fearon, LLP represents stockholders, consumers and pension plan participants in complex class actions in state and federal courts throughout the United States. The name partners of Squitieri & Fearon, LLP formed the firm in 2001 and had been partners in the firm formerly known as Abbey, Gardy & Squitieri, LLP. Messrs. Squitieri and Fearon collectively have over 25 years of class action experience.

Squitieri & Fearon, LLP is active in high profile litigation and has achieved significant results.

The firm has been appointed lead counsel by courts across the country, most recently in the following pending matters:

> Securities Purchasers Class Actions:

- Levie v. Sears Roebuck & Co., et al., 04-CIV-7643 (N.D. Ill.)

- Collier v. Aksys, Ltd., et al., 04-CV-1232 (MRK) (D. Conn.)

> Shareholder Derivative Actions:

- In re Bristol Myers Squibb Derivative Litigation, C.A. No. 02-CV-8571 (U.S.D.C./S.D.N.Y.)

- In re Computer Associates International Inc. Derivative Action, C.A. No. 04-CV-2697 (U.S.D.C./E.D.N.Y.)

Recently, the firm was appointed to a Provisional Committee of plaintiffs' counsel in In re AIG ERISA Litigation, 04-9387 (S.D.N.Y) and was appointed as co-lead counsel for plaintiffs and the Class in In re Avon ERISA Litigation, 05-CV-8603 (S.D.N.Y.).

As lead counsel in Lalonde v. Textron, Inc., et al., 02-3345 (D.R.I.) an ERISA breach of fiduciary case, the firm was successful in convincing the First Circuit Court of Appeals to reverse the District Court and reinstate all of the claims against Textron and related defendants.

The firm is also one of the lead counsel in Aquilino v. The Home Depot, Inc., 04-CIV-4100 (D.N.J.) an FLSA collective action and ERISA class action on behalf of former and current Assistant Store Managers seeking recovery of unpaid pension benefits. The firm is also actively involved in the litigation of In Re Aquila ERISA Litigation, (W.D. MO) 04-00865 on behalf of pension plan

participants and <u>Pietrangelo v. NUI Corporation</u>, 04 Civ. 03223 (D.N.J.) on behalf of pension plan participants.

Messrs. Squitieri and Fearon are accomplished defenders of shareholder rights as attested to by their successful results on behalf of investors in cases in which either Messrs. Squitieri and Fearon were the (or one of the) lead litigation lawyers:

- <u>In re Bristol Myers Squibb Company Derivative Litigation</u>, 02-CIV-8571 facilitated recovery of $200 million on behalf of Company and negotiated the implementation of significant corporate governance enhancements for the Company.

- <u>Laufer v. Lucent Technologies, Inc.</u>, 01-CIV-5229 (D.N.J.) (recovery of approximately 35% of bond purchasers' losses).

- <u>In re Seagate Technology, Inc. Shareholders Litigation</u>, C.A. No. 17932-NC (Del. Ch. Ct. 2000) (approximately $200 million in incremental benefits for shareholders).

- <u>In re Westinghouse Securities Litigation</u>, CA 91-354 (W.D. Pa. 1999) ($67 million recovery).

- <u>In re National Health Laboratories Securities Litigation</u>, CV-92-1949-RBB (S.D.Cal.1995) ($64 million recovery).

- <u>In re National Medical Enterprises Securities Litigation</u>, CV-91-5452-TJH (C.D. Cal. 1994) ($60.7 million recovery).

- <u>In re Coram Healthcare Corp. Securities Litigation</u>, Master File No. 95-N-2074 (D. Colo. 1997) ($47 million recovery).

- <u>In re Leslie Fay Securities Litigation</u>, Master File No. 92 CV 8036 (S.D.N.Y.) ($35 million recovery).

- <u>Demint v. Nationsbank of Florida, et al.</u>, 94-995-CIV-T-23B (U.S.D.C. Middle District of Florida, Tampa Division 1996) (partial settlement of certain claims   for $25 million, remainder of claims settled for $30 million).

- <u>In re Sun Healthcare Group, Inc. Litigation</u>, Master File No. 95-7005 JC/WWD (D.N.M.) ($24 million recovery).

- <u>In re Caterpillar, Inc. Securities Litigation</u>, Civil Actions Nos. 90-1238, 90-1242 (C.D. Ill.) ($23 million recovery).

Messrs. Squitieri and Fearon have received commendations from many courts before whom they have appeared, for example:

- In re Waste Management, Inc. Securities Litigation, C.A. No. 97-C-7709 (N.D. Ill. 1999) ($220 million settlement)

United States District Court Judge Wayne R. Andersen favorably commented on the lawyers who actually litigated the case, including Lee Squitieri:

> "…[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases … in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here … I would say this has been the best representation that I have seen.  But I really mean that."

- In Laufer v. Lucent Technologies, Inc., 01-CV-5229 (D.N.J.), Judge Joel A. Pisano in approving a settlement obtained by Squitieri & Fearon as lead counsel noted that Squitieri & Fearon, LLP was "highly experienced in handling complex, sophisticated securities litigation."

- In In re Seagate Technology, Inc., C.A. No. 17932-NC (Del. Ch. Ct. 2002), Vice Chancellor Leo E. Strine commented:  "Clearly, plaintiffs hit upon some-some very interesting facts, and they put in a lot of – a lot of time, and they did highly skilled work against highly skilled opposition."

The Partners and Associates of the firm are:

**Partners:**

LEE SQUITIERI received a B.A. degree from Rutgers University in 1979.  He received his law degree from New York Law School in 1983 and was admitted to practice law in the State of New Jersey in 1983 and in the State of New York in 1984.  Mr. Squitieri is admitted to the United States District Court for the Southern and Eastern Districts of New York, the Second Circuit, First Circuit, Fifth Circuit, Third Circuit and Seventh Circuit Courts of Appeal, and the District of New Jersey.

STEPHEN J. FEARON, JR. graduated from Boston University in 1986 and received his law degree from New York Law School in 1990.  Mr. Fearon is admitted to the New York State Bar and to the United States District Courts for the Southern and Eastern Districts of New York, the Eastern and Western Districts of Michigan, the District of Arizona as well as the Second and Sixth Circuit Courts of Appeals.

**Associates:**

DANIEL R. LAPINSKI graduated from Rutgers University in 1990.  He received his law degree from Seton Hall School of Law in 1999 and was admitted to practice law in the State of New Jersey in 2000 and in the State of New York in 2001.  Mr. Lapinski is admitted to the District Court of New Jersey and the Southern and Eastern District Courts of New York.

MARIA J. CICCIA graduated from Pace University in 1995.  She received her law degree from New York Law School in 2002 and was admitted to practice law in the States of New York in May 2002 and Connecticut in June 2002.  Ms. Ciccia is admitted to the Southern and Eastern District Courts of New York.

**Associate Pending Admission:**

PHILIP P. FOOTE graduated from Johnson & Wales University in 1997.  He received his law degree from New York Law School in 2005 and passed the July 2005 New York State Bar exam.