UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
                                                            :
                                                            :    05 Civ. 8626 (GEL)
In re REFCO, INC. SECURITIES LITIGATION                     :
                                                            :    **OPINION AND ORDER**
                                                            :
                                                            :
------------------------------------------------------------x

Stuart M. Grant, James J. Sabella, Megan D. McIntyre, Jeff A. Almeida, Christine M. Mackintosh, and Jill Agro, Grant & Eisenhofer P.A., Wilmington, Delaware; Max W. Berger, John P. Coffey, Salvatore J. Graziano, John C. Browne, and Jeremy P. Robinson, Bernstein Litowitz Berger & Grossman LLP, New York, New York, for Plaintiffs.

David E. Mollón, Bruce R. Braun, Bradley E. Lerman, and Linda T. Coberly, Winston & Strawn LLP, New York, New York, for Defendant Grant Thornton LLP.

Barbara Moses and Rachel Korenblat, Morvillo, Ambramowitz, Grand, Iason & Silberberg, P.C., New York, New York, for Defendant Robert Trotsen.

Robert B. McCaw, Lori A. Martin, John V. H. Pierce, Dawn M. Wilson, and Michael H. Park, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for Underwriter Defendants.

Thomas G. Ward and Christopher N. Manning, Williams & Connolly LLP, Washington, D.C., for Nonparty Mayer, Brown, Rowe & Maw LLP.

GERARD E. LYNCH, District Judge:

      This consolidated securities action relates to the decline in share price of Refco, Inc. following Refco's August 2005 initial public offering. Plaintiffs allege that fraud committed by defendants in advance of the IPO inflated the stock price, which then fell when the fraud was exposed, leading to financial losses for plaintiffs.

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), discovery in these consolidated actions has been stayed pending this Court's decision on defendants' motions to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). Plaintiffs now move for a partial lifting of the stay that would allow them to obtain (1) all documents that defendants have produced, or will be producing, to the SEC, the U.S. Attorney's Office, the bankruptcy examiner, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Senior Subordinated Noteholders, "and any other regulatory, governmental or investigative agencies or other private parties involved in reviewing the facts and circumstances giving rise to Refco's demise" (Pl. Mem. 2); (2) all documents that defendants have produced, or will be producing, in any other related litigation; and (3) all documents that various nonparties have produced, or will be producing, related to the first two categories of documents. (Id.) Plaintiffs' motion will be denied.

**DISCUSSION**

The PSLRA states that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Our Court of Appeals has not provided guidance on what constitutes "undue prejudice" in the context of a PSLRA discovery stay. However, various district courts in the Southern District of New York have addressed the issue, and have stated that undue prejudice is "improper or unfair treatment amounting to something less than irreparable harm," In re Vivendi Universal, S.A., Sec. Litig., 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003), quoting Vacold LLC v. Cerami, No. 00 Civ. 4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001), and that "exceptional circumstances" must be present to lift the stay,

2

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. 02 Civ. 5575, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003), quoting Vacold, 2001 WL 167704, at *6.

Here, plaintiffs argue that such exceptional circumstances exist because "[w]ithout access to the documents sought, Lead Plaintiffs will be unduly hampered in their preparation of their case and their advocacy on behalf of the Class because plaintiffs in other actions, and government regulators, will be able to present and refine their positions and weigh the strengths and weaknesses of their claims based on documents that Lead Plaintiffs [cannot scrutinize]." (Pl. Mem. 16.) Specifically, plaintiffs argue that the possibility of undue prejudice has already materialized in connection with plaintiffs' claims against defendant BAWAG P.S.K. Bank fur Arbeit und Wirtschaft und Osterreichische Postsparkasse Aktiengesellschaft ("BAWAG"), because BAWAG has agreed to a settlement with the government and plaintiffs in other actions that "will reportedly exhaust BAWAG's ability to pay to resolve the Class'[s] claims in this Action." (Id. 17.) According to plaintiffs, while other parties in other actions are engaging in "unhindered discovery," plaintiffs are unable to "protect their interests." (Id.)

Plaintiffs' argument is undercut by the fact that after filing their motion, they successfully obtained a settlement agreement with BAWAG. (Pl. Reply 2.) Plaintiffs credit "a combination of fortuitous circumstances and aggressive lawyering" for the settlement, but insist that such circumstances are unlikely to exist in the future, when the government or other claimants go after the resources of other defendants. (Id.)

With the BAWAG settlement no longer serving to illustrate the prejudice of the stay, plaintiffs claim that they are still "'prejudiced by their inability to make informed decisions about their litigation strategy in a rapidly shifting landscape' . . . when they are effectively 'the

3

only major interested party in the . . . proceedings . . . without access to documents that currently form the core of those proceedings.'" (Pl. Reply 5, quoting In re Labranche Sec. Litig., 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004), quoting In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002).) On the record before the Court, however, plaintiffs' inability to make informed decisions due to a lack of access to documents does not rise to the level of undue prejudice.

Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice. "This is because 'delay is an inherent part of every stay of discovery required by the PSLRA.'" In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583, 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006), quoting In re Initial Pub. Offering Litig., 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002). Plaintiffs state that the question for the Court is "whether it is appropriate to force the Class to wait months while motions to dismiss are briefed and decided, while other interested parties . . . are reviewing these materials now." (Pl. Mem. 3.) That, however, is not the question for the Court. Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.

In re WorldCom, Inc. Securities Litigation, on which plaintiffs primarily rely, does not counsel a contrary conclusion. In WorldCom, Judge Cote partially lifted the discovery stay to allow plaintiffs to access "a clearly defined universe of documents, specifically certain documents which WorldCom ha[d] already produced in connection with other identified proceedings." 234 F. Supp. 2d at 306. Here too, plaintiffs seek to obtain documents that have already been produced (or will be produced) to other parties. However, the fact that the documents had already been produced was not itself the basis for the Court's lifting of the stay in WorldCom. Rather, the prior production served to establish that the request to lift the stay was sufficiently particularized, and that it was not unduly burdensome. As a general matter, the mere fact that documents have been provided to a third party does not entitle plaintiffs to a modification of the stay to obtain those documents. See In re Smith Barney Transfer Agent Litig., 2006 WL 1738078, at *2.

In WorldCom, the stay was lifted because the Court determined that "the documents requested by [plaintiffs] must be produced in order to prevent undue prejudice to the interests of the putative investor class." Id. at 305. This undue prejudice resulted from the fact that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had been ordered to prepare for coordinated settlement discussions. Id. The plaintiffs in the ERISA action were not subject to a discovery stay, and therefore, without a lifting of the stay, the PSLRA plaintiffs "would be severely disadvantaged in those discussions if they are denied access to the documents [at issue]." Id. at 306.

In this matter, as in WorldCom, plaintiffs and other parties are apparently engaged in settlement discussions with various defendants. That fact alone, however, does not create the

5

"undue prejudice" necessary to lift the stay. If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the "undue prejudice" provision would essentially eviscerate the stay requirement. That is not what Congress intended. The Court in WorldCom recognized this fact, in holding that "unique circumstances" present in that case necessitated the lifting of the stay. Id. at 305. Those unique circumstances were the court-ordered coordinated settlement discussions, and the "very real risk" that the defendants, after settling with other parties, would "no longer have anything or at least as much to offer" plaintiffs. Id.

Neither circumstance is present here. The Court has not ordered plaintiffs to engage in coordinated settlement discussions with other plaintiffs in other proceedings not bound by the stay. With respect to settlement discussions involving defendants other than BAWAG, plaintiffs speculate, not without reason, that other parties will attempt to settle with other defendants. Indeed, it might come to pass that, at some future date, plaintiffs' lack of access to discovery will prejudice them in settlement discussions with some other defendant, resulting in some risk that the defendant might not have sufficient funds to satisfy plaintiffs' claims. However, that situation is not now before the Court. Plaintiffs might also succeed in future settlement negotiations, much as they did in negotiations with BAWAG. Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is "necessary . . . to prevent undue prejudice," 15 U.S.C. § 78u-4(b)(3)(B), that would otherwise result. Accordingly, plaintiffs' motion to modify the stay is denied.

While the instant motion was sub judice, plaintiffs informed the Court that some defendants have not moved to dismiss the complaint, and that other defendants have moved to

dismiss only some of the counts against them. (Letter from John P. Coffey, July 12, 2006.) Plaintiffs argue that because some defendants will undoubtedly remain in the case, "the stay should be lifted *in its entirety*." (Id.) (emphasis added). In support of this argument, plaintiffs rely on In re Global Crossing, Ltd. Securities Litigation, 322 F. Supp. 2d 319 (S.D.N.Y. 2004). However, plaintiffs' reliance is misplaced.

Plaintiffs cite Global Crossing for the proposition that once a district court denies a defendant's motion to dismiss, discovery should proceed against that individual defendant. This, however, is a misstatement of the Court's holding. While the Court in Global Crossing noted that "the [PSLRA] does not specify how the stay is to be applied in cases involving multiple defendants bringing multiple motions to dismiss," it stated that the "Court need not resolve this ambiguity." Id. at 352. Instead, the Court lifted the stay because plaintiffs there had "raised compelling evidence that further delay of discovery . . . could hamper their ability in the long term to achieve the relief they seek," and that accordingly "resumption of discovery [was] desirable in order to prevent undue prejudice and preserve evidence." Id. 352-53. As discussed above, plaintiffs in this matter have made no such demonstration of undue prejudice. Accordingly, Global Crossing does not support the position plaintiffs advance.

In any event, to the extent the language of Global Crossing supports plaintiffs' proposition that, as a general matter, the denial of a defendant's motion to dismiss lifts the PSLRA stay with respect to that *specific defendant*, that proposition provides no support for the proposition plaintiffs advance – that the stay should be lifted *in its entirety* because not every defendant has moved to dismiss all claims asserted against it. Global Crossing, even with the gloss put upon it by plaintiffs, does not compel such a drastic result. Plaintiffs' request to lift the

7

stay in its entirety is denied.

In addition to arguing for a complete lifting of the stay, plaintiffs advance a secondary position – that the stay should at a minimum be lifted "as to those Defendants who have answered the Amended Complaint or have not moved to dismiss some of the claims asserted against them." (Letter from John P. Coffey, July 12, 2006.) While there is some case law in support of plaintiffs' position, see, e.g., In re Lernout & Hauspie Sec. Litig., 214 F. Supp. 2d 100, 106 (D. Mass. 2002) (allowing limited discovery to proceed against specific defendants despite other defendants' pending motions because the specific defendants' motions to dismiss had been denied), the weight of authority appears to be to the contrary, see, e.g., Sedona Corp. v. Ladenburg Thalmann, No. 03 Civ. 3120, 2005 WL 2647945, at *2-*3 (S.D.N.Y. Oct. 14, 2005) (listing Global Crossing and Lernout as the only cases where language of PSLRA was found to be "ambiguous" on the issue and collecting cases that enforce stay).

The Court need not attempt to resolve this question. Plaintiffs' letter, which is essentially a supplemental reply, raises distinct arguments that were not raised either in their initial memorandum or their reply. Additionally, the relief sought in plaintiffs' letter – a complete lifting of the stay with respect to defendants that have not moved to dismiss all claims against them – is distinct from the relief sought in plaintiffs' motion – a limited lifting of the stay with respect to documents produced to certain third parties. Not surprisingly, plaintiffs' letter was followed by a flurry of responses from various defendants, some arguing that plaintiffs' primary argument to completely lift the stay with respect to all defendants should not apply to them, some alleging certain factual inaccuracies in plaintiffs' letter, and others responding to plaintiffs' secondary argument on the merits, albeit in a summary fashion. With the torrent now subsided,

8

the Court is left without any specific request by plaintiffs nor any appropriate briefing by any party regarding any discernable issue. On this record, the Court will not resolve the question of the proper application of the PSLRA's mandatory stay provision. Generally, courts disfavor new issues being raised in reply briefs, see Rowley v. City of New York, No. 00 Civ 1793, 2005 WL 2429514, at *5 (collecting Second Circuit case law), and the rationale supporting that rule applies with greater force to issues raised in letters following the filing of a reply. Accordingly, the Court declines to address plaintiffs' request for a lifting of the stay with respect to any and all defendants that have not moved to dismiss all claims against them. If plaintiffs wish to lift the stay with respect to specific defendants, they should move to lift the stay with respect to those defendants, thereby allowing the issues to be properly briefed by all affected parties.

Finally, plaintiffs request permission to serve subpoenas on nonparties to preserve evidence related to the instant action. (Pl. Mem. 20-21.) The PSLRA is clear that the need to preserve evidence justifies a limited lifting of the discovery stay. 15 U.S.C. § 78u-4(b)(3)(B). However, while parties to the action are specifically directed to preserve all relevant documents during the pendency of the stay, id. § 78u-4(b)(3)(C), this statutory command does not apply to nonparties, see In re Grand Casinos, Inc. Sec. Litig., 988 F. Supp. 1270, 1272 (D. Minn. 1997). As a result, courts have generally permitted plaintiffs in PSLRA actions to "issue subpoenas that give specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession." In re Tyco Int'l, Ltd., Sec. Litig., No. 00 MD 1335, 2000 WL 33654141, at *5 (D.N.H. July 27, 2000); see also Gervis v. Berg, No. 00 Civ. 3362, 2005 WL 3299436, at *2-*3 (E.D.N.Y. Oct. 20, 2005); In re Grand Casinos, 988 F. Supp. at 1273. Accordingly, plaintiffs are permitted to serve subpoenas requiring third parties to

9

preserve relevant information.

## CONCLUSION

Plaintiffs' motion to modify the PSLRA stay to obtain document discovery from defendants is denied. Plaintiffs' request to serve document-preservation subpoenas on third parties is granted. The Clerk of the Court is respectfully directed to close the motion (Doc. #133) for all internal statistical purposes.

SO ORDERED.

Dated: New York, New York
August 8, 2006

_____
GERARD E. LYNCH
United States District Judge