UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                          :
          _____                    :          05 Civ. 8626 (GEL)
In re REFCO, INC. SECURITIES LITIGATION   :
                                          :          **OPINION AND ORDER**
                                          :
------------------------------------------------------------x

James J. Sabella, Stuart M. Grant, Megan D.
McIntyre, Jeff A. Almeida, Christine M.
Mackintosh, and Jill Agro, Grant & Eisenhofer
P.A., New York, New York, and Wilmington,
Delaware, for Lead Plaintiffs.

Robert B. McCaw, Lori A. Martin, John V.H.
Pierce, Dawn M. Wilson, and Michael Feinberg,
Wilmer Cutler Pickering Hale and Dorr LLP, New
York, New York, for the Underwriter Defendants.

David Mollón, Bruce R. Braun, Bradley E. Lerman,
and Linda T. Coberly, Winston & Strawn LLP,
New York, New York and Chicago, Illinois, for
defendant Grant Thornton LLP.

Andrew J. Levander, Nicolle L. Jacoby, and
Carolyn L. Hiller, Dechert LLP, New York, New
York, for defendant BAWAG.


GERARD E. LYNCH, District Judge:

          Lead Plaintiffs Pacific Investment Management Company, LLC, and RH Capital LLC

("Lead Plaintiffs") move for preliminary approval of a settlement agreement with defendant

BAWAG P.S.K. Bank fur Arbeit und Wirtschaft und Osterreichische Postsparkasse

Aktiengesellschaft ("BAWAG") and related relief.[1]  (Docs. # 309-311; Ltr from James J. Sabella

_____

          [1] Lead Plaintiffs also seek preliminary certification of the class for settlement purposes,
preliminary approval of the form and manner of notice to the class proposed by lead plaintiffs,
and the scheduling of a final approval hearing.

to the Court, Nov. 28, 2006.)[2]  This opinion addresses objections to the partial settlement by two groups of nonsettling defendants.  The motion for preliminary approval will be denied.

## BACKGROUND

On October 5, 2006, an objection to the proposed settlement agreement was filed by a group of non-settling defendants collectively known as the "Underwriter Defendants."[3]  (Doc. # 324.)  Another objection was filed by defendant Grant Thornton LLP ("Grant Thornton"). (Doc. # 319.)

The proposed settlement agreement caused several disputes, only one of which remains for the Court to address.  First, there was a dispute concerning the extent to which the settlement would bar actions for contribution against BAWAG by nonsettling defendants.[4]  In the wake of oral argument on November 13, 2006, the parties resolved this disagreement, including new

---

[2] Many of the documents in this case have lengthy titles that will not help the reader understand which of the controversies pertaining to this settlement they address; a number of these documents were mooted by later agreements.  To help clarify the contents of the voluminous record in this case, this opinion will identify documents that have been mooted by later developments, but will refer to them only by their docket numbers to avoid wordiness and confusion.

[3] The Underwriter Defendants are Banc of America Securities LLC, CMG Institutional Trading LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities, Inc., Goldman, Sachs & Co., Harris Nesbitt Corp., HSBC Securities (USA) Inc., J.P. Morgan Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Muriel Siebert & Co. Inc., Samuel A. Ramirez & Company, Inc., Sandler O'Neill & Partners, L.P., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., and William Blair & Company, L.L.C.

[4] BAWAG argued that all contribution claims were barred by the original language, while Lead Plaintiffs asserted that some claims might not be precluded.  On this question, the Underwriter Defendants and Grant Thornton sided with BAWAG.  (See Docs. # 319, 324, 325, 341, 342, 344, Ltr. From Robert B. McCaw to the Court, Oct. 30, 2006, Ltr. From Andrew Levander to the Court, Nov. 1, 2006, Ltr. From David E. Mollón to the Court, Nov. 3, 2006.)

language in the settlement agreement to clarify that the settlement bars all contribution claims. (Ltr. from James J. Sabella to the Court, Nov. 28, 2006.)

Second, the parties disagreed as to whether the law required that a judgment credit provision be included in the settlement, that is, whether the settlement agreement should clarify the extent to which, in the event of a later judgment against non-settling defendants, that judgment would be reduced to take account of the settlement with BAWAG.[5]  This disagreement, too, has now been resolved, and an amended settlement agreement has been submitted to the Court containing a judgment credit provision.  (Ltr. From James J. Sabella to the Court, Nov. 28, 2006.)

The amended agreement, however, has not satisfied the objectors.  The new judgment credit provision reads as follows:

> Any final verdict or judgment that may be obtained on behalf of the Class or a Class Member against a Non-Settling Defendant or Non-Settling Defendants shall be reduced in the aggregate by the greater of (i) an amount that corresponds to the percentage of responsibility of the Settling Defendants for the damages awarded to the Class or a Class Member *on the claim on which Judgment is entered against any of the Non-Settling Defendants*; or (ii) the amount paid by or on behalf of the Settling Defendants to the Class *that is allocated to the claim (pursuant to the Allocation Plan) on which Judgment is entered against any of the Non-Settling Defendants.  The Allocation Plan shall be proposed by Lead Plaintiffs and subject to approval by the Court.*

---

[5] The Underwriter Defendants and Grant Thornton argued that a judgment credit provision was required.  (Docs. # 319, 324, Ltr from Robert B. McCaw to the Court, Oct. 30, 2006.)  Lead Plaintiffs argued that no such provision was required.  (Docs. # 325, 341.) BAWAG stated that it did not object to the addition of such language (Doc. #342).  At oral argument on November 13, the Court noted the apparent failure of the parties to achieve a genuine agreement.  (Tr. 19.)

(Ltr. from James J. Sabella to the Court, Nov. 28, 2006 (emphasis added)).  The new language thus provides for a judgment reduction, but only for monies paid by or attributed to BAWAG that relate to claims that are adjudged to be common between BAWAG and the nonsettling defendants.  In other words, nonsettling defendants will receive credit not for the entire amount of BAWAG's settlement or responsibility, but only for the amount allocated to common claims.

The parties' interests here are not complex: the nonsettling defendants would prefer to receive credit for the entire amount of BAWAG's settlement or responsibility, while Lead Plaintiffs would prefer to be able to recover from both BAWAG and the nonsettling defendants as long as the recovery sought can be traced to distinct legal claims.

Pursuant to a briefing schedule agreed upon by the parties, the Underwriter Defendants and Grant Thornton submitted papers objecting to the new judgment credit provision (Doc. # 350 ("Underwriter D. Mem."); Doc. # 351 ("Grant Thornton Mem.")), and on January 5, 2007, Lead Plaintiffs submitted their response (Doc. # 353 ("P. Mem.")).  This matter is now fully briefed and ready for the Court's consideration.

## DISCUSSION

### I.  Standards for Approval of Settlements and Judgment Credit Provisions

"Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role," but in class or derivative actions, judicial approval of settlements is required.  In re Masters Mates & Pilots Pension Plan, 957 F.2d 1020, 1025 (2d Cir. 1992).  Before approving a settlement in such cases, a district court must ensure that the terms of a settlement agreement are fair, reasonable, and adequate to all parties affected, including third parties.  Id.  "In other

words, where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." Id.

Federal law determines whether one defendant in a federal securities action is entitled to a credit against judgment for a settlement by another defendant. Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989). The fundamental principle on which the law in this area rests is the "one satisfaction" rule, which provides that "a plaintiff is entitled to only one satisfaction for each injury." Id. Under this rule, "a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." Id.

A series of cases in the Second Circuit have explained that the one satisfaction rule requires that nonsettling defendants receive credit for settling defendants' share of common damages, that is, damages for which both the settling and nonsettling defendants are responsible. Settlements have been approved when they provided a judgment reduction formula that gave nonsettling defendants credit for the *greater* of (1) "the settlement amount for common damages," or (2) the "proportionate share" of the settling defendants' fault as proven at trial. Gerber v. MTC Elec. Techs. Co., Ltd., 329 F.3d 297, 303 (2d Cir. 2003). This "capped proportionate share" formula is acceptable because it "ensures that a judgment credit is at *least* the amount of the settlement for common damages" and therefore complies with the one satisfaction rule. Id. (emphasis in original).

A judgment credit must give nonsettling defendants credit for at least the amount of the settlement for common damages, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages. The one satisfaction rule also requires

that nonsettling defendants receive credit for any amount actually paid by settling defendants for common damages.   Thus, the Second Circuit struck down a judgment reduction provision that gave credit for the *lesser* of the amount paid or the proportion of fault.  <u>Masters Mates</u>, 957 F.2d at 1031.  "Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." <u>Id</u>.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), whose applicability to the proposed settlement is not contested by the parties, specifically requires that nonsettling parties receive a judgment credit consistent with these common-law requirements.

> If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of--
>> (i) an amount that corresponds to the percentage of responsibility of that covered person; or
>> (ii) the amount paid to the plaintiff by that covered person.

15 U.S.C. § 78u-4(f)(7)(B).  Thus, the PSLRA in essence requires that nonsettling defendants receive a judgment credit according to the "capped proportionate share" formula discussed above.

## II.   <u>The Proposed Settlement Agreement</u>

The language of the proposed settlement agreement effectively adds a qualifying clause to each prong of § 78u-4(f)(7)(B):

> Any final verdict or judgment . . . shall be reduced . . . by the greater of
>> (i) an amount that corresponds to the percentage of responsibility of the Settling Defendants for the damages awarded to the Class or a Class Member *on the claim on which Judgment is entered against any of the Non-Settling Defendants*; or

6

> (ii) the amount paid by or on behalf of the Settling
> Defendants to the Class *that is allocated to the claim
> (pursuant to the Allocation Plan) on which Judgment is
> entered against any of the Non-Settling Defendants.  The
> Allocation Plan shall be proposed by Lead Plaintiffs and
> subject to approval by the Court.*

(Ltr. from James J. Sabella to the Court, Nov. 28, 2006 (emphasis added)).  This formula might

be described as giving a judgment credit for the capped proportionate share of common claims.

Lead Plaintiffs argue that the qualifying language is consistent with the PSLRA.  They

point out that although § 78u-4(f)(7)(B) requires that a judgment credit in accordance with the

capped proportionate share formula be given at the time of final judgment, it says nothing about

whether any specific language must be included in any particular settlement.  They read

§ 78u-4(f)(7)(B) as a general requirement that judgment credit provisions give credit for the

greater of the amount paid or the fault of the settling defendant.  Their language, they argue, is

merely a helpful clarification of these requirements that explains that no judgment credit will be

given for the settlement of claims under different laws.[6]

The Lead Plaintiffs point to what they believe is an unfairness that could result if their

language is not adopted: the possibility that a settlement could preclude recovery against

defendants who are liable under different laws than settling defendants.  For example, while

BAWAG is accused of violating both the Securities Act of 1933 and the Exchange Act of 1934,

the Underwriter Defendants are accused only of violating the Securities Act.  Therefore, without

---

[6] Lead Plaintiffs note that an earlier case in this district approved a settlement with judgment credit language similar to theirs.  See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, WL 2591402, at *13-14 (S.D.N.Y. Nov. 12, 2004).  In that case, however, there was no objection to the relevant language; the only challenge related to whether the allocation plan "correctly divided the settlement fund between the Securities Act and Exchange Act claims."  Id. at 13.

Lead Plaintiffs' language, claims against the Underwriter Defendants could be reduced by 100% of the BAWAG settlement even if the eventual judgment found BAWAG liable only for claims under entirely different laws.  It would be unfair, they argue, for a defendant who faces claims only under the Securities Act to receive a "windfall judgment credit" for another defendant's settlement of Exchange Act claims.

Lead Plaintiff's argument here is with the one satisfaction rule itself.  This rule provides that plaintiffs are allowed only one recovery for any given injury.  The Second Circuit's formulations have been clear that the rule deals with underlying damages, not legal claims.  "[W]here a settlement and a judgment compensate a plaintiff for the *same injury*, a nonsettling defendant is entitled to a judgment reduction at least in the amount of a prior settlement." Masters Mates, 957 F.2d at 1030 (emphasis added).  Put another way, "[a]bsent a showing that *damages are not common*, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." Id. at 1031 (emphasis added).  These formulations require an analysis based on the underlying injury, not the pleadings that categorize it or the statutes under which liability is found.

Even if a single injury is deemed a violation of two entirely separate laws, as many injuries are, it would be fundamentally unfair for plaintiffs to recover twice for it.  The one satisfaction rule allows, and in some situations requires, the result that Lead Plaintiffs fear, because it provides that a judgment must be reduced in the amount of *any* common damages, even if those damages are attributable to violations of entirely different laws.  Therefore, Lead Plaintiffs' arguments for the necessity of their additional language are unconvincing.

8

The Underwriter Defendants and Grant Thornton argue that the language of the proposed agreement is inconsistent with both the PSLRA and the common law discussed above, and that it has the potential to allow a double recovery by the plaintiffs.  Their arguments are persuasive. As another court in this district noted when rejecting a different attempt to vary the judgment credit formula set forth in § 78u-4(7)(B)(i), courts must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2005 WL 335201, at *10 (S.D.N.Y. Feb. 14, 2005) (internal citations and quotation marks omitted).  The formula set forth in § 78u-4(7)(B)(i) represents a "specific measure of proportionate fault," id. at *11, chosen by Congress and based on the standard common-law formula, and so attempts to vary it must be viewed with great skepticism.

The objecting defendants' concerns about double recovery have merit.  As noted above, some of the claims asserted against BAWAG are not also asserted against Underwriter Defendants.  If and when a final judgment issues in this case, and the Underwriter Defendants seek to claim a judgment reduction for BAWAG's settlement, Lead Plaintiffs' language would make it necessary to determine whether the BAWAG settlement related to a "claim on which Judgment is entered" against the Underwriter Defendants.  If, for example, the BAWAG settlement was allocated in its entirety to a claim *not* asserted against the Underwriter Defendants, then the Underwriter Defendants would receive no judgment reduction — even if the BAWAG settlement was for common damages stemming from a common injury.

This will not do.  The PSLRA and the common law require that nonsettling defendants receive judgment credit for settlement of common damages; this credit does not depend upon the

law under which the damages are due.  If the plaintiffs are entitled to a monetary recovery for a particular loss under the Securities Act, they may not recover for the same loss under the Exchange Act.

The objecting defendants are no doubt concerned that Lead Plaintiffs and BAWAG could choose to allocate all or most damages to a claim not raised against non-settling defendants, and thereby sweep away those defendants' judgment reduction merely by strategically choosing which claim to emphasize in their settlement.  (Of course, settling defendants would have every incentive to cooperate, because Lead Plaintiffs would have reason to accept less in settlement if they could be assured that the settlement would not reduce their ability to recover against future defendants.)  As Lead Plaintiffs note, however, any allocation of damages will be subject to the approval of the Court, which reduces the likelihood that Lead Plaintiffs and BAWAG could collusively allocate claims to a claim not shared by BAWAG and the nonsettling defendants. Under the proposed settlement agreement, damages may be allocated to a claim only pursuant to (1) final judgment, or (2) an allocation plan  "proposed by Lead Plaintiffs and subject to approval by the Court."  Judicial review would limit the power of Lead Plaintiffs and settling defendants to determine which damages are "allocated" to which claim.

Judicial review of the allocation of claims, however, does not save the settlement agreement, because the allocation of *any* common damages to a claim not shared by BAWAG and settling defendants would deprive nonsettling defendants of their right to receive credit for those common damages.  Even if the Court made sure that only damages fairly attributable to one particular statute were so allocated, the process of allocation itself is inconsistent with the one satisfaction rule.  What matters is the harm, not the statute under which it is proscribed.

10

If the damages for which nonsettling defendants are liable are in fact not common — that is, if the underlying injuries are not the same — then there is no need for the language of the proposed settlement agreement, because even under the traditional approach nonsettling defendants would receive no judgment credit.  In this situation, Lead Plaintiffs would not need to worry that the standard capped proportionate share formula will preclude their recovery, because if the harms are separate they are not common damages and recovery for both harms would be proper.  If, on the other hand, the damages are common — that is, if they do arise from a common injury — then Lead Plaintiffs' language could allow them a double recovery by treating that single injury as two separate "claims."  Accordingly, the proposed language is either unnecessary or unlawful, and in any event it is inconsistent with the PSLRA and the law of this Circuit.

**III.**  **Lead Plaintiffs' Request in the Alternative to Sever the Judgment Reduction Provision**

Lead Plaintiffs ask in the alternative for approval of the settlement without the judgment reduction provision, in effect reiterating their position that because a judgment credit will be required as a matter of law, see 15 U.S.C. § 78u-4(f)(7)(B), there is no need to include a judgment credit provision in the settlement itself.  (P. Mem. at 11.)  The Underwriter Defendants and Grant Thornton have previously objected to a settlement with no judgment credit provision, cf. Denney v. Deutsche Bank AG, 443 F.3d 253, 274 (2d Cir. 2006) (holding that nonsettling parties would be "unfairly prejudiced by the failure to specify how that full and sufficient compensation [for a settlement of common damages] will be calculated."), and presumably maintain these objections.

If the parties had reached an agreement that the settlement should go forward with no judgment credit provision in the event their preferred provision was rejected by the Court, it would be appropriate to reach the issue of whether an agreement lacking a judgment credit provision was acceptable.  However, the parties have conspicuously failed to affirm that they have reached such an understanding.  BAWAG has submitted no briefing concerning the revised settlement agreement, and Lead Plaintiffs' alternative request for approval of an agreement with no judgment credit provision is made solely on their own behalf, with no indication of BAWAG's position.

It is true that BAWAG at an earlier stage of these proceedings agreed to a settlement with no judgment credit provision; this was the original proposed settlement submitted by the parties.  However, this issue has been the subject of further negotiations since that time.  Indeed, the question of whether an agreement could be approved without a judgment credit provision is precisely the question the parties successfully resolved without the Court's intervention after oral argument, resulting in the present amended settlement agreement.

Therefore, the Court having rejected the proposed settlement submitted by the parties, there is at this time no proposed settlement before the Court.  In the absence of a genuine agreement, to approve the settlement with an excised judgment credit provision would be to remake the agreement between the parties.  Accordingly, Lead Plaintiffs' request to modify the terms of the settlement is denied.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs' motion for preliminary approval of the proposed settlement agreement and related relief is DENIED without prejudice to subsequent

motions for approval of a settlement agreement consistent with the standards set forth in this

Opinion.

SO ORDERED.

Dated: New York, New York
        January 9, 2007

                                                    _____
                                                      GERARD E. LYNCH
                                                    United States District Judge