UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                              :
                              :               05 Civ. 8626 (GEL)
                              :
In re REFCO, INC. SECURITIES LITIGATION   :         **OPINION AND ORDER**
                              :
                              :
--------------------------------------------------------------x

John P. Coffey, Max W. Berger, Salvatore J. Graziano, John C. Browne, and Jeremy P. Robinson, Bernstein Litowitz Berger & Grossman LLP, New York, New York, and Stuart M. Grant, James J. Sabella, Jonathan D. Margolis, Megan D. McIntyre, and Christine M. Mackintosh, Grant & Eisenhofer P.A., New York, New York and Wilmington, Delaware, for Lead Plaintiffs Pacific Investment Management Company LLC and RH Capital LLC and the Prospective Class.

Robert B. McCaw, Lori A. Martin, John V.H. Pierce, Dawn M. Wilson, and Michael L. Feinberg, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for Defendants Credit Suisse Securities (USA) LLC, Banc of America Securities LLC, and Deutsche Bank Securities, Inc.

GERARD E. LYNCH, District Judge:

       Earlier in the course of this putative class action for securities fraud, this Court dismissed

plaintiffs' claims under § 11 of the Securities Act against defendants Credit Suisse Securities

(USA), Banc of America Securities LLC, and Deutsche Bank Securities, Inc. (collectively, the

"144A Defendants") in connection with a so-called "Exxon Capital exchange," but permitted

plaintiffs to replead.  See In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 628-31 (S.D.N.Y.

2007).  Plaintiffs in due course filed a Second Amended Consolidated Class Action Complaint

further detailing their allegations against these defendants, who now again move to dismiss.  The

motion will be granted.

**BACKGROUND**

The factual background of the fraudulent scheme to deceive investors and others about the true financial circumstances of the international brokerage firm Refco Inc. and its affiliated companies is set forth in detail in the Court's prior opinion dealing with the Exxon Capital exchange, see id. at 618-20, and in any number of additional opinions,[1] and need not be repeated here. It is sufficient for present purposes that plaintiffs have adequately alleged that Refco covered up massive losses resulting from uncollectible loans, and that this deliberately fraudulent non-disclosure rendered materially misleading (among other Refco financial statements and prospectuses for the sale of securities) the Bond Registration Statement filed with the Securities and Exchange Commission ("SEC"), pursuant to which Refco offered registered bonds for public sale in April 2005.[2] (Compl. ¶ 166;[3] see Wilson Decl. Ex. C.) Prior to this offering, Refco had offered unregistered bonds through an underwriting by the 144A Defendants, who purchased the securities and immediately resold them to certain institutional investors, including some of the plaintiffs. These bonds were exempt from registration under SEC Rule 144A, 17 C.F.R. § 230.144A, which exempts private placements to qualified

---

[1] See, e.g., Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP, No. 07 Civ. 8663, 2008 WL 3166536, at *1-2 (S.D.N.Y. Aug. 6, 2008); In re Refco Capital Markets, Ltd. Brokerage Customers Sec. Litig., No. 06 Civ. 643, 2007 WL 2694469, at *4 (S.D.N.Y. Sept. 13, 2007); American Financial Int'l Group-Asia, L.L.C. v. Bennett, No. 05 Civ. 8988, 2007 WL 1732427, at *1 (S.D.N.Y. June 14, 2007).

[2] Refco filed a Form S-4 Registration Statement with the SEC on October 12, 2004, which was subsequently amended through numerous Form S-4/A filings in late 2004 and early 2005 (collectively, the "Bond Registration Statement"). (Compl. ¶ 165.) The Bond Registration Statement became effective, and registered bonds were issued pursuant thereto, on or about April 13, 2005. (Id. ¶ 166.)

[3] Unless otherwise noted, all references to the Complaint in this opinion are to the Second Amended Consolidated Class Action Complaint. (Doc. # 437.)

institutional buyers from the registration requirements of the Securities Act of 1933.  Holders of

the unregistered bonds were permitted to exchange their securities for registered bonds issued in

the 2005 public offering in a transaction referred to as an "Exxon Capital exchange," In re Refco,

503 F. Supp. 2d at 624, and certain of the plaintiffs undertook such exchanges.  (Compl. ¶ 166.)

     In the First Amended Consolidated Class Action Complaint in this action (Doc. # 86),

plaintiffs alleged that the 144A Defendants violated §§ 11 and 12 of the Securities Act by

fraudulently offering or selling securities, arguing primarily that the issuance of the unregistered

144A securities and the Exxon Capital exchange were part of an integrated financing scheme,

and that in consequence the underwriters of the unregistered offering should be treated as sellers

of the registered bonds.[4]  The Court rejected that argument, holding that the two transactions

were separate, and that defendants' participation in underwriting the unregistered bonds did not

ipso facto render them sellers of the later-issued registered bonds.  In re Refco, 503 F. Supp. 2d

at 627-28.

     The First Amended Complaint also alleged, in conclusory fashion, that the 144A

Defendants were liable under § 11 for their "participat[ion]" as underwriters in the sale of the

registered bonds themselves.  Id. at 629.  The 144A Defendants sought dismissal of this count

also, arguing that the only "participation" alleged was their service as underwriters in the 144A

transaction, and that the allegation was based on the same "single transaction" theory that the

---

[4] Plaintiffs also argued that § 12 covered the initial sale of unregistered bonds in its own right, and that because the offering memorandum pursuant to which those securities were sold itself contained the same misrepresentations of Refco's financial status as did the eventual registration statement, defendants had violated that section in underwriting the initial unregistered offering.  The Court rejected that argument, holding that § 12(a)(2) does not apply to private offerings.  503 F. Supp. 2d at 624-27, citing Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 567-71 (1995); Yung v. Lee, 432 F.3d 142, 149 (2d Cir. 2005).

Court had already rejected.  Id. at 628-29.  Noting that it was not clear what the plaintiffs meant to allege, the Court dismissed the §11 claim without prejudice, holding that "[b]ecause the plaintiffs have failed to make any specific allegations of 'participation' of the kind that would qualify the [144A Defendants] as underwriters of the public offering, the plaintiffs' conclusory allegation that they 'participated' in the creation of a registration statement," in the context of the other allegations of the Complaint suggesting that the allegation of participation referred to the underwriting of the 144A transaction, was insufficient to state a claim.  Id. at 629-30.  Nevertheless, the Court authorized plaintiffs to replead:

> Of course, if the Court has misconstrued the complaint and the plaintiffs intended to allege some other participation in the creation of the Bond Registration Statement, plaintiffs can seek leave to file an amended complaint explaining the participation on which they rely.

Id. at 630 n.15.

Plaintiffs have now taken up that challenge, supplementing their initial allegation with more specific indications of what they claim is sufficient "participation" on the part of the defendants in the underwriting of the registered securities.  Thus, plaintiffs now allege that the 144A Defendants and their lawyers played a substantial role in drafting and editing the Bond Registration Statement on the basis of which the registered bonds were sold to the public. (Compl. ¶¶ 170-78.)  Plaintiffs argue that this is sufficient to make the 144A Defendants responsible under § 11 for the misstatements contained in the Bond Registration Statement.  The 144A Defendants argue that involvement in the drafting or editing of an offering document in connection with a public offering is insufficient for § 11 liability.

**DISCUSSION**

Section 11 of the Securities Act permits purchasers of securities to sue various responsible actors for any "untrue statement of a material fact" in a registration statement or for the omission of a material fact "necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Four of those categories of actors (signatories of the registration statement, directors or partners in the issuer of the securities, persons named in the registration statement as anticipated directors or partners, and accountants or other experts named in the statement as having prepared the statement or incorporated financial statements or reports) clearly do not apply to the 144A Defendants. Plaintiffs claim that the 144A Defendants fall within the fifth category, "underwriter[s] with respect to such security." Id. § 77k(a)(5). The Securities Act defines "underwriter" as:

> any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or *participates or has a direct or indirect participation in any such undertaking*, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission.

Id. § 77b(a)(11) (emphasis added). Plaintiffs argue that the 144A Defendants' role in the drafting of the Bond Registration Statement constitutes "participation" in the "undertaking" of underwriting the registered bonds issued by Refco.

Plaintiffs do not cite any case in which a court has held that a party that participated in the drafting of a registration statement, but who was not identified to the public as endorsing the truth of representations contained therein, has been held liable under § 11 as an underwriter.

5

They argue, however, that the language of the statute is broad, and has been "interpreted broadly." (P. Mem. 9, quoting <u>Harden v. Raffensperger, Hughes & Co.</u>, 65 F.3d 1392, 1400 (7th Cir. 1995).) According to plaintiffs, the 144A Defendants clearly "participated" in the distribution of the registered bonds by assisting in the drafting of the registration statement.

As the 144A Defendants point out, however, courts have generally refused to extend § 11 liability to those professionals most directly involved in the drafting of registration statements: lawyers. <u>See</u>, <u>e.g.</u>, <u>In re N.Y. City Shoes Sec. Litig.</u>, No. 87 Civ. 4677, 1988 WL 80125, at *4 (E.D. Pa. July 8, 1998); <u>Escott v. BarChris Constr. Corp.</u>, 283 F. Supp. 643, 683 (S.D.N.Y. 1968).[5] The Supreme Court, in dictum, dismissed the possibility of such liability out of hand, broadly rejecting the possibility of § 11 liability for those who merely play a role in drafting registration statements:

> Moreover, certain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action. These include corporate officers other than those specified in 15 U.S.C. § 77k(a), lawyers not acting as "experts," and accountants with respect to parts of a registration statement which they are not named as having prepared or certified.

---

[5] Plaintiffs attempt to distinguish these cases by noting that the plaintiffs in those cases argued that the lawyers' role in drafting registration statements made them "experts" under 15 U.S.C. § 77k(a)(4), rather than "underwriters" under § 77k(a)(5). (P. Br. 12.) Yet it would seem even stranger to classify attorneys who draft the documents on which the public rely as "underwriters" — a term generally understood to refer to those who undertake actively to sell the securities — than to consider them "profession[als] . . . named as having prepared . . . any part of the registration statement." 15 U.S.C. § 77k(a)(4). Given that both plaintiffs attempting to extend § 11 liability to lawyers and courts rejecting those efforts have looked primarily to the subsection (4) category of expert professionals rather than to the subsection (5) category of underwriters, their failure to notice what plaintiffs here present as a straightforward application of broad and literal language speaks volumes.

Herman & MacLean v. Huddleston, 459 U.S. 375, 386 n.22 (1983). All such persons commonly participate in the drafting of registration statements in ways at least as extensive — and generally far more so — than the 144A Defendants here are alleged to have done, yet the Supreme Court took it as a given that such persons cannot be sued under § 11.

Plaintiffs dismiss Huddleston's statement as "dictum" (P. Br. 12), which it clearly is. But the context of that dictum is illuminating about the reasons for caution in extending liability under § 11. In Huddleston, the Court affirmed a verdict against professionals who participated in drafting a registration statement and who had acted with knowledge of the fraudulent misrepresentations contained therein, under § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, over their objection that only § 11 liability would lie for misstatements in a registration statement. The Court rejected that argument, finding that the § 11 remedy was not exclusive, and noting, in the footnote cited above, that professionals such as the accountants before the Court could not generally be reached under § 11. The distinction is important: such participants in the drafting process can be sued for violations of § 10(b) and Rule 10b-5 for *fraud* when they participate in making fraudulent statements with scienter. But § 11 liability attaches to the parties specified in that provision even without scienter. See Huddleston, 459 U.S. at 382. To hold all of the myriad of participants in the drafting process — and not merely the specific categories of individuals defined in § 11 as the proponents of the statement — responsible for any material misstatement in the document would make anyone who commented on a draft statement, however innocently, a guarantor of every assertion in the registration statement.

While the definition of "underwriter" is indeed broad and is to be interpreted broadly, it must be read in relation to the underwriting function that the definition is intended to capture.

Thus, a careful reading of the definition refutes plaintiffs' mistaken contention that a literal reading of the statute favors their interpretation. The definition primarily references those who "purchase[ ] from an issuer with a view to . . . the distribution of any security." 15 U.S.C. § 77b(a)(11). The language on which plaintiffs rely then adds to this definition anyone who "participates . . . direct[ly] or indirect[ly] . . . in any *such undertaking*." Id. (emphasis added). The "participation" in question is participation in the "undertaking" referred to immediately before: that of purchasing securities from an issuer with a view to their resale — that is, the underwriting of a securities offering as commonly understood. Whatever conduct may be covered by this language, it cannot easily be read to include the 144A Defendants' merely commenting on a draft of a registration statement for a bond offering in which they took no part in the distribution of the bonds.

The general judicial understanding of the statute has been in accord with this Court's interpretation, as courts have emphasized that the breadth of the definition of "underwriter" is intended to sweep up all — but only — those who play a role in the distribution of the securities. As this Court stated in its earlier opinion, while the definition is indeed broad, "'[u]nderwriter' is not . . . a term of unlimited applicability that includes anyone associated with a given transaction." In re Refco, 503 F. Supp. 2d at 629. Indeed, the Eighth Circuit has held that "[t]he congressional intent in defining 'underwriter' was to cover all persons who might operate as conduits for the transfer of securities to the public." Ackerberg v. Johnson, 892 F.2d 1328, 1335 (8th Cir. 1989) (citing legislative history). Similarly, other courts have recognized that it is

"crucial to the definition of 'underwriter' that any underwriter must participate in the distribution of a security." McFarland v. Memorex Corp., 493 F. Supp. 631, 644 (C.D. Cal. 1980).[6]

Plaintiffs' effort to redeem their complaint by identifying actions taken by defendants behind the scenes merely emphasizes the critical defect identified by the Court with respect to their prior complaint:

> "[U]nderwriters are subjected to liability because they hold themselves out as professionals who are able to evaluate the financial condition of the issuer." [McFarland, 493 F. Supp.] at 646. This is precisely what the [144A Defendants] did *not* do with respect to the public offering in this case. Plaintiffs have alleged no facts suggesting [that the 144A Defendants] held themselves out in any respect as to the public offering; on the contrary, any role they may have played in that offering was never publicly acknowledged.

In re Refco, 503 F. Supp. 2d at 629. Plaintiffs' detailed description of defendants' participation in drafting or editing the registration statement does not cure this defect; it remains the case that defendants did not in any way hold themselves out as evaluating the registered bonds or endorsing the registration statement.

---

[6] The only cases cited by plaintiffs that remotely bear on the issue are plainly inapposite. Plaintiffs cite a number of cases that, in the course of holding that particular defendants were *not* underwriters, note among other considerations that the defendants did *not* play a role in the preparation of the registration statement. (P. Mem. 11, citing American High-Income Trust v. Alliedsignal, 329 F. Supp. 2d 534, 542 (S.D.N.Y. 2004); In re Safety-Kleen Corp. Bondholders Litig., No. 00 Civ. 1145-17, 2002 WL 32795850, at *2-3 (D.S.C. Sept. 9, 2002); In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).) No such case holds that defendants who *do* play such a role *are* ipso facto statutory underwriters. Plaintiffs' citation to Harden v. Raffensperger, Hughes & Co., 65 F.3d 1392 (7th Cir. 1995), is similarly inapposite as the Seventh Circuit's definition of "underwriter" in that case "dealt with an entirely different animal, the 'qualified independent underwriter,' that accepts § 11 liability per NASD regulations," In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03 MD 1529, 2007 WL 2615928, at *9 (S.D.N.Y. Sept. 10, 2007).

In short, like the prior complaint, the Second Amended Complaint fails to state a claim against the 144A Defendants for liability under § 11.

## CONCLUSION

Accordingly, for the reasons stated above, the motion of defendants Credit Suisse Securities (USA), Banc of America Securities LLC, and Deutsche Bank Securities, Inc. to dismiss Count Three of the Second Amended Consolidated Class Action Complaint as against them is granted.

SO ORDERED.

Dated: New York, New York
        August 14, 2008

_____
GERARD E. LYNCH
United States District Judge

10