UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re REFCO, INC. SECURITIES LITIGATION    :    05 Civ. 8626 (JSR)
                                                              :
------------------------------------------------------------- x

# NOTICE OF FILING OF REPORT AND RECOMMENDATION OF THE SPECIAL MASTER ON MOTIONS FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT WITH GRANT THORNTON LLP, (II) PRELIMINARY APPROVAL OF SETTLEMENT WITH JOSEPH J. MURPHY, DENNIS A. KLEJNA AND WILLIAM M. SEXTON, (III) PRELIMINARY CERTIFICATION OF THE CLASS AS AGAINST THESE SETTLING DEFENDANTS FOR PURPOSES OF SETTLEMENT, AND (IV) APPROVAL OF NOTICE TO THE CLASS

TO:   All Counsel of Record

PLEASE TAKE NOTICE that Lead Plaintiffs have received and are hereby filing a Report and Recommendation of the Special Master on Motions for (I) Preliminary Approval of Settlement with Grant Thornton LLP, (II) Preliminary Approval of Settlement with Joseph J. Murphy, Dennis A. Klejna and William M. Sexton, (III) Preliminary Certification of the Class as Against These Settling Defendants for Purposes of Settlement, and (IV) Approval of Notice to the Class, dated November 10, 2010 from Special Master Daniel J. Capra (the "Report And Recommendation"). The Report And Recommendation is attached hereto as Exhibit A.

DATED:  November 10, 2010

| | |
|---|---|
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **GRANT & EISENHOFER P.A.** |
| | By: /s/ James Sabella |
| By: /s/ Salvatore J. Graziano | Stuart M. Grant (SG-8157) |
| Salvatore J. Graziano (SG-6854) | James J. Sabella (JS-5454) |
| John C. Browne (JB-0391) | Brenda F. Szydlo |
| Jeremy P. Robinson | 485 Lexington Avenue, 29th Floor |
| 1285 Avenue of the Americas | New York, NY 10017 |
| New York, NY 10019 | Telephone: (646) 722-8500 |
| Telephone: (212) 554-1400 | Facsimile: (646) 722-8501 |
| Facsimile: (212) 554-1444 | - and - |
| *Attorneys for Lead Plaintiff* | Megan D. McIntyre |
| *RH Capital Associates LLC* | Christine M. Mackintosh |
| *and Co-Lead Counsel for the Putative* | Chase Manhattan Centre |
| *Class* | 1201 North Market Street |
| | Wilmington, DE 19801 |
| | Telephone: (302) 622-7000 |
| | Facsimile: (302) 622-7100 |
| | *Attorneys for Lead Plaintiff Pacific Investment Management Company LLC and Co-Lead Counsel for the Putative Class* |

# EXHIBIT A

Case 1:05-cv-08626-JSR   Document 760   Filed 11/10/10   Page 2 of 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
                                                               :
In re REFCO, INC. SECURITIES LITIGATION    :    05 Civ. 8626 (JSR)
                                                               :
                                                               :
-------------------------------------------------------------- x


REPORT AND RECOMMENDATION OF THE SPECIAL MASTER ON MOTIONS FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT WITH GRANT THORNTON LLP, (II) PRELIMINARY APPROVAL OF SETTLEMENT WITH JOSEPH J. MURPHY, DENNIS A. KLEJNA AND WILLIAM M. SEXTON, (III) PRELIMINARY CERTIFICATION OF THE CLASS AS AGAINST THESE SETTLING DEFENDANTS FOR PURPOSES OF SETTLEMENT, AND (III) APPROVAL OF NOTICE TO THE CLASS

Daniel J. Capra, Special Master


     Lead Plaintiffs Pacific Investment Management Company LLC and RH Capital Associates LLC (together, "Lead Plaintiffs") move for the following:

    1. Preliminary approval of the separate and independent settlements (the "Settlements") of this securities class action as against defendants

        (a) Grant Thornton LLP (the "Grant Thornton Settlement"); and

        (b) Joseph J. Murphy, Dennis A. Klejna and William M. Sexton (the "Officers Settlement").[1]


    2. preliminary certification of the proposed class as against the Settling Defendants for purposes of the Settlements;

    3. approval of the form and manner of notice to putative class members; and

    4. the scheduling of a hearing on final approval of the Settlements and Co-Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.

---

[1] The defendants who have entered into the Stipulations of Settlement before the Special Master will be referred to collectively as the "Settling Defendants."

1

*This Report and Recommendation concludes that:*

1. The proposed Settlements are fair and reasonable and should be preliminarily approved.

2. The requirements for preliminarily certifying a settlement class action as against the Settling Defendants have been met.

3. The proposed notices --- attached to this Report and Recommendation --- meet the standards of Rule 23, the PSLRA, and the Due Process Clause.

4. The schedule for a hearing and final approval is reasonable, but is of course subject to the Court's determination.


**I. Background**

Lead Plaintiffs have reached an agreement to settle this securities class action as against Grant Thornton --- former outside auditor of Refco Inc. --- for $25,000,000, as set forth in the Stipulation and Agreement of Settlement between Lead Plaintiffs and Grant Thornton, dated October 18, 2010. In addition, Lead Plaintiffs have reached agreement to settle the action as against three former officers of Refco --- Joseph Murphy, Dennis Klejna and William Sexton (collectively, the "Settling Officer Defendants") --- in exchange for cash payments totaling $300,000, as set forth in the Stipulation and Agreement of Settlement between Lead Plaintiffs and the Settling Officer Defendants dated September 30, 2010. [2] These Settlements are in addition to 1) settlements with other defendants previously approved by the Court and totaling approximately $342,000,000, and 2) class recovery of a percentage of amounts forfeited or paid to the federal government by Refco officers, including the Settling Officers. The Settlement Agreements, Proposed Preliminary Approval Order, and Proposed Notices to the Class now before the Special Master --- and attached to this Report and Recommendation --- contain substantially the same terms as those preliminarily approved by the Court with respect to other defendants.

At the final settlement hearing, the Court will have before it more expansive motion papers submitted in support of the proposed Settlements, and will be asked to make a determination as to whether each Settlement is fair, reasonable and adequate. At this time, Lead Plaintiffs request only preliminary approval of the Settlements so that notice may be provided to the Settlement Class.

The Special Master has previously issued two Reports involving settlements by other defendants in this action. See (1) Report and Recommendation of the Special Master on Motions for Preliminary Approval of Settlements with Underwriter Defendants, Audit Committee Defendants, and the THL Defendants, dated May 11, 2010, and (2) Report and Recommendation of the Special Master on Motions for Preliminary Approval of Proposed Plan of Allocation and Authorization to Distribute Revised Settlement and Class Notices, dated July 9, 2010. Familiarity with these prior Reports is presumed.

---

[2] The Stipulations of Settlement are attached to this Report and Recommendation.

2

**II. Description of the Litigation and the Settlement Process**

Beginning in October 2005, multiple securities class action complaints were filed against Refco, Inc. ("Refco"), some of Refco's former officers and directors, the THL Defendants and Refco's auditors and underwriters. By Order dated February 8, 2006, the Court consolidated the class actions, appointed Pacific Investment Management Company LLC and RH Capital Associates LLC as Lead Plaintiffs, and appointed the law firms of Grant & Eisenhofer P.A. and Bernstein Litowitz Berger & Grossmann LLP to serve as co-lead counsel ("Lead Plaintiffs' Counsel") for the putative class.

On April 3, 2006, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint and, on May 5, 2006, a First Amended Consolidated Class Action Complaint. The First Amended Complaint as directed to the Settling Defendants alleged violations of Section 11 of the Securities Act of 1933 (the "Securities Act") and the Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the class members' purchases of Refco Group Ltd., LLC/Refco Finance Inc. 9% Senior Subordinated Notes due 2012 ("Refco Notes") and Refco common stock ("Refco Stock"). The First Amended Complaint alleged that Grant Thornton failed to conduct its audits of Refco in accordance with generally accepted auditing standards, and acted recklessly in falsely certifying that Refco's financial statements were fairly stated in accordance with generally accepted accounting principles. As to the Settling Officer Defendants, the First Amended Complaint alleged that they failed to exercise due diligence and failed to disclose material information about Refco's financial condition when they prepared and approved SEC filings and other public statements during the Class Period, including false statements in the registration statements for the Refco Notes and Refco Stock.

On July 10, 2006, a motion to dismiss the First Amended Complaint was filed, which Lead Plaintiffs opposed. On April 30, 2007, the Court granted in part and denied in part the motions to dismiss the First Amended Complaint. On December 3, 2007, Lead Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "Complaint"), asserting only the claims against Grant Thornton and the Settling Officer Defendants that were not dismissed in the April 30, 2007 Order.

The parties subsequently participated in an extensive discovery process, coordinated with the other Refco-related actions also pending in this Court, which included the production of millions of pages of emails, memoranda, and other documents by both parties and non-parties as well as the taking of more than 100 depositions.

On March 26, 2010, the Court entered a stipulation and order of partial discontinuance, dismissing the scienter-based claims asserted against the Settling Officer Defendants pursuant to Sections 10(b) and 20(a) of the Exchange Act, leaving pending against the Settling Officer defendants only the non-scienter-based claims asserted against them under Sections 11 and 15 of the Securities Act.

On April 23, 2010, Grant Thornton moved for summary judgment on all of Lead Plaintiffs' claims against it. That motion was fully briefed and thousands of pages were before the Special Master at the time the parties reached an agreement to settle.

The Lead Plaintiffs and Grant Thornton undertook extensive arms'-length negotiations – including a formal mediation before an experienced mediator, the Hon. Layn R. Phillips (Ret.). The parties eventually entered into an agreement in principle on August 22, 2010 providing for the resolution of this Action, subject to Court approval, under which Lead Plaintiffs' claims against Grant Thornton would be dismissed with prejudice in exchange for Grant Thornton's payment of $25,000,000 in cash to the Settlement Class.

As to the Settling Officer Defendants, Lead Plaintiffs reached an agreement in principle to settle the class claims against them in exchange for the following cash payments: $150,000 from Murphy, $50,000 from Klejna, and $100,000 from Sexton. This total sum of $300,000 was in addition to a proportion of the cash that each Settling Officer Defendant had forfeited to the government and that the government transferred to the class after Lead Plaintiffs had filed a petition for remission. The Settling Officer Defendants forfeited the following amounts to the government, of which the government indicated that a substantial portion would be remitted to the class: $5,000,000 from Murphy, $1,250,000 from Klejna, and $2,050,000 from Sexton.

The Special Master finds that Lead Plaintiffs' Counsel have undertaken an extensive factual investigation and legal analysis as to the claims against the Settling Defendants in the Action and the Settling Defendants' defenses to those claims, and have analyzed potential damages that could be recovered from the Settling Defendants if the Settlement Class were to prevail at trial. Lead Plaintiffs' Counsel have reviewed and analyzed millions of pages of documents obtained in discovery --- which is complete. In addition, Lead Plaintiffs' Counsel participated in the depositions of, among others, individuals with intimate knowledge of the pertinent facts.

The settlements before the Special Master resolve the case against all remaining defendants.[3] In October, 2010, Lead Plaintiffs decided to voluntarily dismiss the claims against defendants Philip R. Bennett, Santo Maggio, Tone N. Grant, Robert Trosten, Gerald M. Sherer, Philip Silverman, Refco Group Holdings, Inc. ("RGHI") and the Philip R. Bennett Three Year Annuity Trust.[4] The Special Master finds that these voluntary dismissals were reasonable, given the fact that: 1) Bennett, Maggio, Grant and Trosten already forfeited substantial sums, a portion of which was remitted to the class, and those defendants have no meaningful assets remaining; 2) RGHI and the Trust are

---

[3] The prior settlements with BAWAG, Sandler O'Neill, the THL defendants, the Underwriters, et. al. are all described in the Report and Recommendation dated May 11, 2010.

[4] The dismissals were effected by stipulations filed on October 15, 2010 in accordance with Fed.R.Civ.P. 41(a)(1)(ii). Because the class had not been certified, these dismissals did not require court approval or notice to the class. See Fed.R. Civ.P. 23(e) (requiring court approval and notice for settling claims of a certified class). Each of the dismissal stipulations was signed by Judge Rakoff (*see* Dkt. Nos. 744 and 748-752).

instrumentalities of Bennett with no meaningful assets; 3) Silverman appears to have no meaningful assets; and 4) the case against Sherer is not strong enough to justify the expense of a trial.

---

With this background, the Report and Recommendation will analyze the following questions:

1. Should each of the Settlements be preliminarily approved?

2. Should the settlement class be certified as against the Settling Defendants?

3. Is the proposed notice to the class sufficient? and

4. Is the schedule proposed by the parties reasonable?

**III. Should the Settlements Be Preliminarily Approved?**

When reviewing a proposed settlement for preliminary approval, the basic questions are whether "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re IPO, supra* at 83 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litigation, Third § 30.42 (1995)). *See also Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length.").

A class action settlement must also be evaluated within the context of the public policy favoring settlement of actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

These settlements were clearly the result of arms'-length negotiation and there is nothing at all to indicate any collusion. Discussions were intense and, with respect to Grant Thornton, included

5

substantial discussions with an experienced mediator. The Special Master can personally attest to the fact that these cases have been actively litigated; and fact discovery was detailed, voluminous, and comprehensive. Lead Plaintiffs' counsel are experienced and capable. The results of each of the Settlements are beneficial to the class and represent an excellent outcome in light of the risks and expense of litigating these actions against these Defendants.[5] These cases involve difficult and highly contested questions of law and fact. While wrongdoing clearly occurred at Refco, both the claims against Grant Thornton and the claims against the Settling Officer Defendants are highly contested and complicated, and the decisions to date in this MDL have dealt many setbacks to claimants against those parties.[6] In light of the complexities, expense and risk of pursuing these actions further, the Settlements fall comfortably within the range of reasonableness.

### *Recommendation on Preliminary Approval of Settlements*

*In light of all the factors discussed above, the Special Master recommends that the Settlements be preliminarily approved.* Each Settlement was the product of serious, informed, noncollusive negotiations. Each is a fair result for the class in light of the risks and expenses of future litigation. Neither Settlement grants preferential treatment to class representatives or segments of the class and each falls well within the range of possible approval. The settlement negotiations were extremely hard-fought and were achieved after a full discovery process. The Special Master concludes that the amounts recovered from the Settling Defendants are based on a well-informed and intelligent assessment of the relative strength of the claims and the amount of potential recoveries against each of the Settling Defendants.

### III. Should the Settlement Class Be Certified as Against the Settling Defendants?

The proposed Settlement Class in this action consists of all persons and entities who purchased or otherwise acquired Refco Group Ltd., LLC/Refco Finance Inc. 9% Senior Subordinated Notes due 2012 (CUSIP Nos. 75866HAA5 and/or 75866HAC1) and/or common stock of Refco (CUSIP No. 75866G109) during the period July 1, 2004 through and including October 17, 2005 (the "Class Period"), and who were damaged thereby (the "Settlement Class"). Excluded from

---

[5] The class claim for damages is alleged by Lead Plaintiffs to be approximately $900 million plus interest. The Settlements with the Underwriter Defendants (including Sandler O'Neill) and the THL Defendants and Audit Committee Defendants provide a total of $193 million. The settlement with BAWAG yielded a recovery of approximately $149 million. When the proposed settlements with Grant Thornton and the Settling Officer Defendants are included --- together with a significant sum from the government by way of restitution --- the total recovery represents a substantial percentage of the class's claim for damages.

[6] Specifically with respect to Grant Thornton, the Special Master reviewed the papers on the summary judgment motion with the view to preparing a Report and Recommendation --- before the parties agreed to settle. Without coming to a final resolution of the matter, the Special Master can at least say that Grant Thornton presented strong arguments in favor of the motion.

the proposed Settlement Class are: (i) Refco; (ii) the Defendants; (iii) any person or entity who was a partner, executive officer, director, controlling person, subsidiary, or affiliate of Refco or of any Defendant during the Class Period; (iv) immediate family members of the individual Defendants; (v) entities in which Refco or any Defendant has a controlling interest; and (vi) the legal representatives, heirs, estates, administrators, predecessors, successors or assigns of any of the foregoing excluded persons and entities; provided however, that any Investment Vehicle (as defined in the Stipulations) is not to be deemed an excluded person.  Also excluded from the Settlement Class is any person or entity previously excluded from the Settlement Class by the Court, and any person or entity filing a valid and timely request for exclusion in accordance with the requirements set forth in the Notice. This section considers whether the proposed Settlement Class meets the requirements for class certification under Rule 23.

**A. General Discussion**

Judge Scheindlin described the process for certifying a settlement class in *In re IPO Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007):

> The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the court to postpone formal certification of the class until after settlement negotiations have ended. A settlement-only class must meet all the requirements of Federal Rule of Civil Procedure 23, with one important exception: because the case will never go to trial, the court need not consider the manageability of the proceedings should the case or cases proceed to trial.  In the settlement context, the "specifications of [Rule 23] --- those designed to protect absentees by blocking unwarranted or overbroad class definitions --- demand undiluted, even heightened, attention." [7]

In *In re IPO*, *supra,* Judge Scheindlin also noted that settlement class certification is more appropriate if the case is further along and the parties have therefore had a chance to assess the strengths and weaknesses of their positions. She relied on the Manual for Complex Litigation Fourth, §21.32, which states:

> Extended litigation between or among adversaries might bolster confidence that the settlement negotiations were at arm's length. If, by contrast, the case is filed as a settlement class action or certified for settlement with little or no discovery, it may be more difficult to assess the strengths and weaknesses of the parties' claims or defenses, to determine the appropriate definition of the class, and to consider how class members will actually benefit from the proposed settlement.

In this case, the Rule 23 requirement should be applied from the perspective that this action has been heavily litigated, with extensive and completed fact discovery. It is also important to note

---

[7] Quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).

that the Settlement Class is essentially identical to the Settlement Classes with respect to other defendants that have already been certified by the Court.[8]

### B. Rule 23 Requirements

To be certified, a putative class must meet all four requirements of Rule 23(a) --- numerosity, commonality, typicality, and adequacy of representation --- as well as the requirements of one of the three subsections of Rule 23(b). In this case, the pertinent subsection of Rule 23(b) to be satisfied is subsection (3), which requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements will be addressed in turn.

#### 1. Rule 23(a)

##### a. *Numerosity*

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Impracticable does not mean "impossible" --- the test is whether joinder of all members of the putative class would be difficult or inconvenient. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). While there is no absolute rule on the minimum number to meet the numerosity requirement, any number over forty is generally sufficient. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) ("Because numerosity is presumed at a level of 40 members (1 *Newberg On Class Actions 2d,* (1985 Ed.) § 3.05), whether viewed as 700 tax-collecting jurisdictions or 300 assessing jurisdictions, the number of defendants vastly exceeds this threshold. Numerosity is therefore satisfied.").

Here, the Settlement Class is comprised of purchasers of approximately 30.4 million shares of Refco common stock and $600 million par amount of Refco Notes. When notice was provided to putative members of essentially the same class in connection with the Underwriter and THL and Audit Committee Settlements, the notices were mailed to over 40,200 potential class members. *See* Affidavit of Steven J. Cirami, dated October 20, 2010, at ¶ 6 (Dkt. No. 747). Although not all of these notice recipients may turn out to be Settlement Class Members, it is clear that the class is sufficiently numerous that joinder of all members would be impracticable and that Rule 23(a)(1) is satisfied. *See, e.g., Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement).

##### b. *Commonality*

---

[8] See, e.g., Orders entered by Judge Rakoff with respect to THL, Audit Committee, and Underwriter Settlements, dated October 28, 2010.

8

Commonality requires a showing that common issues of fact or law affect all class members. "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *In re IPO, supra,* at 84 (quoting *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.1996)). The commonality requirement "has been applied permissively in the context of securities fraud litigation." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y.2006). Moreover, "[i]t is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class." *Id.* (quotation omitted). Generally speaking, where putative class members have been injured by the same course of conduct involving material misrepresentations or omissions, the commonality requirement is satisfied. *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y.1986) ("The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication. Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23....").

The claims against the Settling Defendants raise many common questions of law and fact for the defined class, including:

- Whether the registration statements and prospectuses for Refco Notes and Refco Stock, including the Offering Memorandum, the Bond Registration Statement, the IPO Registration Statement and the Prospectus, contained material misstatements or omitted to state material information;

- Whether the Settling Defendants can establish any statutory affirmative defenses, such as defenses of due diligence or reasonable care;

- Whether Grant Thornton acted with scienter;

- Whether, for purposes of the Section 10(b) claims against Grant Thornton, the fraud-on-the-market doctrine can be used to establish a presumption of reliance;

- Whether, for purposes of the Section 10(b) claims against Grant Thornton, the fraud-created-the-market doctrine can be used to establish a presumption of reliance;

- Whether the Settling Officer Defendants were "controlling persons" of Refco for purposes of the Section 15 claim;

- Whether and to what extent the market prices of Refco Notes and Refco Stock were artificially inflated during the Class Period due to the alleged misstatements or omissions in the registration statements and prospectuses; and

- Whether and to what extent the Settlement Class members sustained damages as a result of the alleged misconduct, and the proper measure of damages.

Because these questions of law and fact are common to all members of the Settlement Class with respect to the claims against the various defendants, the commonality requirement of Rule 23(a)(2) is easily met.

### c. Typicality

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This requirement "is not demanding." *Fogarazzo v. Lehman Bros., Inc.,* 232 F.R.D. 176, 180 (S.D.N.Y. 2005) "A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendants' liability." *In re IPO, supra,* at 84. With respect to securities actions, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y.).

If a putative class representative's claims is subject to unique defenses, it will not satisfy the typicality requirement. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). A defense is unique if it will become the focus of the litigation, thus overshadowing the primary claims and prejudicing other class members. *See Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989). Thus, the commonality and typicality requirements " 'tend to merge' because '[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

In this case, Lead Plaintiffs' claims regarding the Settling Defendants are typical of the class. Lead Plaintiffs allege that they, like the rest of the Settlement Class, paid artificially-inflated prices for Refco Notes or Refco Stock as a result of the same alleged misrepresentations and omissions. Lead Plaintiffs' claims, and the claims of absent Settlement Class Members, are based on the same theories and will be proven by the same evidence. None of the Settling Defendants have a defense against Lead Plaintiffs that is different from any defense that could be applicable to the rest of the class. Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

### d. Adequacy

Under Rule 23(a)(4), Lead Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." "Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable." *In re IPO, supra,* at 85.

10

In this case there is no conflict between Lead Plaintiffs and members of the Settlement Class. Lead Plaintiffs and the Settlement Class share the common objective of maximizing recovery. *See, e.g., In re Polaraid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members"). Nor is there any concern at all about adequacy of counsel. Lead Plaintiffs' Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified and able to conduct this litigation, as Judge Lynch recognized when appointing them co-lead counsel for the putative class and in approving the settlement Lead Plaintiffs' Counsel previously negotiated with BAWAG --- and as Judge Rakoff recognized in approving the Settlement with the THL Defendants, Underwriters and Audit Committee. Lead Plaintiffs' submissions to and arguments before the Special Master have been excellent --- without question the work of highly skilled and committed lawyers.

For all these reasons, Rule 23(a)(4) is satisfied.

**2. Rule 23(b)**

Assuming the Rule 23(a) requirements are met, Lead Plaintiffs must establish that the action is "maintainable" as defined by Rule 23(b). An action is maintainable as a class action if one of three alternative definitions of maintainability set forth in Rule 23(b) is met. Lead Plaintiffs argue that this putative class action is maintainable under subdivision (b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[9] Rule 23(b)(3) thus has two requirements: "predominance" and "superiority."

### *a. Predominance*

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re IPO, supra*, at 86 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001)). "The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)." *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y. 2002) (quoting *Amchem, supra,* 521 U.S. at 623-24). Courts have found that the predominance requirement is not met where individual inquiries could overtake the common issues. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 209 F.R.D. 323, 350 (S.D.N.Y. 2002)

---

[9] Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997) (citation omitted).

11

(finding individual issues predominate even though defendants conceded commonality); *Augustin v. Jablonsky*, 2001 WL 770839, at *13 (E.D.N.Y.) (proximate causation issues predominate even though the plaintiffs showed commonality under Rule 23(a)(2)).

Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Marsh & McLennan*, 2009 WL 5178546, at *11. *See also In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class."). It follows that in securities fraud cases, predominance is likely to be found, because purchasers tend to be similarly situated with respect to statements made to them and alleged duties, if any, owed to them. *See Amchem, supra,* 521 U.S. at 625 (noting that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud....").

In this matter, the same alleged courses of conduct by the Settling Defendants form the basis of all Settlement Class members' claims against those respective defendants. The issues of liability are applicable to all members defined as within the class. Individual issues such as amount of recovery are much more straightforward and noncontroversial than the common issues on liability. The predominance requirement of Rule 23(b)(3) is therefore satisfied for purposes of these Settlements, as it was for purposes of the BAWAG Settlement and the Underwriters/THL and Audit Committee Settlements.

### *b. Superiority*

In order to satisfy Rule 23(b)(3), a plaintiff must establish that a class action is superior to other methods of adjudication. Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Considering these factors, this consolidated class action is "superior to other available methods for fairly and efficiently adjudicating" the claims of the large number of purchasers of Refco securities. There appear to be no pending individual lawsuits that would be disrupted by class certification --- which is hardly surprising given the tremendous costs associated with securities fraud litigation. And because individual claims are so expensive to maintain, the class members' interest in individually controlling their separate actions is at a minimum. That is why courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of

12

> pursing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*In re Blech,* 187 F.R.D. 97, 107 (S.D.N.Y. 1999). *See also Marsh & McLennan*, 2009 WL 5178546, at *12 (recognizing that the "class action is uniquely suited to resolving securities fraud claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible'") (quoting *Darquea v. Jarden Corp.*, 2008 WL 622811, at *5 (S.D.N.Y.) (alterations in original).[10]

The scope and complexity of Lead Plaintiffs' claims against the Settling Defendants, together with the high cost of individual litigation, make it likely that the vast majority of the Settlement Class members would be without a remedy absent class certification. And as noted above, no relevant concern can be raised about managing the litigation of a class action in this case, because the court would be certifying a settlement class.

For all these reasons, the requirements of Rule 23(b)(3) are satisfied.

### *Recommendation on Class Certification*

*For all the above reasons, a settlement class should be certified for the actions against Grant Thornton and the Settling Officer Defendants for the purpose of effectuating the Settlement. The provision for certification is contained in the preliminary approval orders attached to this Report and Recommendation.*

### III. Should the Proposed Notice Be Approved?

The parties have proposed a joint notice and Summary Notices, which are attached to this Report and Recommendation, to inform class members of both of the proposed Settlements. As outlined in the Preliminary Approval Orders, also attached to this Report and Recommendation, Lead Plaintiffs will notify Settlement Class Members of the Settlements by mailing the Notice and Plan of Allocation to all Settlement Class Members who were identified in conjunction with the previous settlement in this action. The Notice will advise Settlement Class Members of the essential

---

[10] It is therefore not surprising that not a single class member opted out of the BAWAG settlement approved by Judge Lynch, and only one nominal class member opted out of the settlements with the Underwriters and THL and the Audit Committee.

terms of the respective Settlements and of information regarding Lead Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for opting out of the Settlement Class and for objecting to the Settlements or the motion for attorneys' fees and reimbursement of litigation expenses. The proposed Preliminary Approval Orders further require Lead Plaintiffs to cause the Summary Notice of the Settlements to be published once in the national edition of *Investor's Business Daily* within ten (10) business days of the mailing of the Notices. The Notice, Plan of Allocation and Proof of Claim form will also be posted on the Claims Administrator's website and on the website maintained by Lead Plaintiffs' counsel, www.refcosecuritieslitigation.com.

The proposed notices are substantially similar to the notices previously approved by Judge Lynch in the BAWAG settlement, and by Judge Rakoff in the Underwriters/THL and Audit Committee Settlements, except that the Proof of Claim form will not be enclosed with the Notice. Lead Plaintiffs' Counsel have explained that this is because Settlement Class Members who submitted a Proof of Claim for any of the previous settlements need not do so again, and Lead Plaintiffs' Counsel wish to avoid the confusion that would occur if duplicative claims are submitted. The Notice will inform Settlement Class Members how to obtain a Proof of Claim form (either online or by calling a toll-free phone number) if they have not already submitted one.

Fed.R.Civ.P. 23(e)(1)(B) provides that, in the event of a settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." To satisfy due process, the notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Secs. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 2006). "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as Co-Lead Counsel acted reasonably in selecting means likely to inform persons affected." *Id.*

As Judge Scheindlin noted in *In re IPO, supra,* at 94, a description of how the proceeds will be allocated among class members is "undoubtedly an important factor in a class member's decision of whether to opt out of a class settlement." The notice packet in this matter contains a plan of allocation of the settlement proceeds that is in all material respects identical to that approved by Judge Rakoff for the Underwriters/THL and Audit Committee Settlement. The plan of allocation included with the proposed notice is clearly stated.

The Notice also provides a clear description of Lead Plaintiffs' Counsel's request for payment of attorneys' fees and expenses.

The Special Master finds that the form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A .Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The language used is straightforward, not excessively legalese, and putative class members are informed about their options in clear and comprehensible language.

The manner of providing notice, which includes individual notice by mail to all Settlement Class Members who have been identified in connection with the previous settlements in this action, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y.) (finding that notice satisfies Rule 23 and due process where "[n]otice will be mailed to class members that appear in the company's transfer records at his or her last known address and to approximately 4,400 brokers, banks and other financial institutions that may hold stock for class members. Notice will also be published in *Investor's Business Daily* and on a dedicated website on the internet.").

### *Recommendation Regarding Notice*

*The proposed notices satisfy the requirements of Rule 23, the PSLRA, and the Due Process Clause.*

## IV. Proposed Schedule

Lead Plaintiffs and the Settling Defendants have proposed a schedule for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlements or Lead Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses; submitting papers in support of final approval of the Settlements; and the Settlement Hearing. The proposal is attached to this Report and Recommendation.

The dates set appear reasonably expeditious. But it is obviously for the Court to determine its schedule going forward.

## V. Conclusion

The Special Master recommends that:

1. The Settlements with Grant Thornton and the Settling Officer Defendants be preliminarily approved.

2. Settlement classes as against the Settling Defendants be approved for the purpose of effectuating the Settlement.

3. The proposed form and manner of notice be approved.

                                                Daniel J. Capra
                                                Special Master

Dated: November 10, 2010
New York, New York

Attachments to Report and Recommendation:

1. Stipulation and Agreement of Settlement Between Lead Plaintiffs and Grant Thornton LLP dated October 18, 2010.

2. Stipulation and Agreement of Settlement Between Lead Plaintiffs and Defendants Joseph J. Murphy, Dennis A. Klejna and William M. Sexton dated September 30, 2010.

3. Proposed Notice.

4. Plan of Allocation

5. Proposed Summary Notice.

6. Proposed Preliminary Approval Order.

7. Proposed Schedule.