UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                     :

In re REFCO, INC. SECURITIES LITIGATION    :        05 Civ. 8626 (JSR)

                                                     :
------------------------------------------------------------ x

## LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR APPROVAL OF DISTRIBUTION PLAN

Lead Plaintiffs, RH Capital Associates LLC and Pacific Investment Management Company LLC, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submit this memorandum in support of their motion for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the above-captioned action (the "Action"). The proposed plan is set forth in the accompanying Declaration of Stephen J. Cirami in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Cirami Declaration" or "Cirami Decl."), submitted on behalf of the Court-appointed Claims Administrator, The Garden City Group, Inc. ("GCG").[1] If granted, the motion will permit the distribution of all the net settlement funds created by the settlements achieved in the Action as well as a portion of the funds recovered by Lead Plaintiffs and Lead Counsel from victim restitution funds established by government (the "Government Restitution Amount") to Class Members whose claims are approved for payment, with the remainder of the victim restitution funds to be held in reserve for future payment of additional claims.[2]

---

[1] Unless otherwise indicated, all terms with initial capitalization used herein shall have the meanings ascribed to them in the Stipulations (defined below in footnote 3) or in the Cirami Declaration.

[2] As discussed below and in the Cirami Declaration, there are some Claims that are still being processed ("Claims-in-Process"). Under the proposed distribution plan, a reserve will be created

**BACKGROUND**

Between 2007 and 2010, Lead Plaintiffs entered into six separate Stipulations of settlement with defendants in the Action, all of which have been approved by the Court (collectively, the "Settlements").[3] Together, these Settlements represent a complete resolution of all claims brought in this consolidated Action that were not dismissed by the Court as a result of the defendants' motions to dismiss. Pursuant to the terms of the Stipulations, defendants collectively deposited $367.3 million into escrow for the benefit of the Class.[4] Additionally,

---

by holding back part of the Government Restitution Amount to pay any of those Claims that are subsequently recommended for payment. Those future payments will bring the approved Claims-in-Process claimants into a state of parity with claimants who will be paid in the proposed Initial Distribution.

[3] The "Stipulations" are: the Stipulation and Agreement of Settlement between Lead Plaintiffs and Defendant BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft dated February 13, 2007 (Dkt. No. 357-2) (the "BAWAG Stipulation"); the Stipulation and Agreement of Settlement Between Lead Plaintiffs and Defendant Sandler O'Neill & Partners L.P. dated October 10, 2008 (Dkt. No. 534-2) (the "Sandler O'Neill Stipulation"); the Stipulation and Agreement of Settlement Between Lead Plaintiffs and the Settling Underwriter Defendants dated April 20, 2010 (Dkt. No. 683) (the "Underwriters Stipulation"); the Amended Stipulation and Agreement of Settlement dated March 29, 2010 and amended May 3, 2010 (Dkt. No. 696-1) (the "Audit Committee and THL Stipulation") (collectively the "Earlier Settlements"); the Stipulation and Agreement of Settlement Between Lead Plaintiffs and Defendants Joseph J. Murphy, Dennis A. Klejna and William Sexton, dated September 30, 2010 (Dkt. No. 743-2) ("the "Officer Defendants Stipulation"), and the Stipulation and Agreement of Settlement Between Lead Plaintiffs and Grant Thornton LLP, dated October 18, 2010 (Dkt. No. 743-1) (the "Grant Thornton Stipulation") (collectively the "Later Settlements").

[4] The Court has certified a Class for purposes of the Settlements, consisting of all persons and entities who purchased or otherwise acquired Refco Group Ltd., LLC/Refco Finance Inc. 9% Senior Subordinated Notes due 2012 and/or common stock of Refco during the period July 1, 2004 through and including October 17, 2005 and who were damaged thereby. Excluded from the Class are: (a) Refco; (b) the Defendants; (c) any person or entity who was a partner, executive officer, director, controlling person, subsidiary, or affiliate of Refco or of any Defendant during the Class Period; (d) immediate family members of the individual Defendants; (e) entities in which Refco or any Defendant has a Controlling Interest; and (f) the legal representatives, heirs, estates, administrators, predecessors, successors or assigns of any of the foregoing excluded persons and entities. Also excluded from the Class is the one individual who excluded himself by filing a valid and timely request for exclusion.

2

Lead Plaintiffs and Lead Counsel have recovered more than $40 million for the benefit of the Class in government restitution funds.

In accordance with the Orders preliminarily approving the Settlements, GCG has mailed notices of the Settlements and Proof of Claim forms to potential Class Members and to brokers and other nominees. In March 2007, GCG mailed approximately 32,700 Notices of the BAWAG Settlement. Cirami Decl. ¶ 6. Beginning on August 11, 2010, GCG mailed over 40,200 packets which contained Notices concerning the Audit Committee and THL Settlement, the Sandler O'Neill Settlement and the Underwriters Settlement, and Proof of Claim forms with a claim filing deadline of November 9, 2010. *Id*. And, beginning on December 15, 2010, GCG mailed over 43,000 Notices pertaining to the Grant Thornton and Officer Defendants Settlements. *Id*. The Notice of the Grant Thornton and Officer Defendants Settlements informed Class Members that a Proof of Claim with an updated claim filing deadline of March 15, 2011 was available on the Refco securities litigation website, www.refcosecuritieslitigation.com, or upon request by calling GCG's toll-free number, but that if they had filed a Proof of Claim form in connection with the Earlier Settlements, they did not need to submit another Proof of Claim form in order to be eligible to participate in the Grant Thornton and Officer Defendants Settlements.

As set forth in the Cirami Declaration, the claims administration process has been completed with respect to all claims filed in connection with the Earlier Settlements and many claims submitted in connection with the Later Settlements. Lead Plaintiffs have filed this motion for approval of a distribution plan in order to be able to distribute the proceeds of the Settlements to Class Members whose claims are approved for payment as expeditiously as possible. The Effective Date of each of the Earlier Settlements has occurred and the Effective Date of the Later

Settlements will occur on April 22, 2011.[5]  Accordingly, pursuant to the Stipulations,[6] Lead Plaintiffs respectfully ask the Court to enter the proposed order approving the distribution plan.

## **CLAIMS ADMINISTRATION**

As detailed in the accompanying Cirami Declaration, GCG has received 8,680 Proof of Claim forms as of April 11, 2011.  Cirami Decl. ¶ 9.  GCG has completed processing the Proofs of Claim submitted in response to the Notices of the Audit Committee and THL Settlement and the Underwriters Settlement, as to which there was a claim filing deadline of November 9, 2010, as well as the claims received prior to March 1, 2011 in connection with the Grant Thornton and Officer Defendants Settlements.[7]  *Id*. ¶ 5.

Many of the Proofs of Claim initially submitted were incomplete, unsigned, not properly documented, or filed by claimants who were not Class Members.  Cirami Decl. ¶ 28.  To the extent that a Proof of Claim was wholly deficient (for example, if the Proof of Claim was missing documentation for the entire Proof of Claim, the claimant did not sign the Proof of Claim or did not provide enough information to calculate the Recognized Claim, or if the Proof of Claim was determined to have no Recognized Claim under the Court-approved Plan of

---

[5]  Lead Plaintiffs do not expect anything to impede or delay the occurrence of the Effective Date of the Later Settlements.  As there were no objections to those settlements, there is no one with standing to appeal.  Nonetheless, if for any reason either or both of these Later Settlements do not become final, Lead Plaintiffs will not distribute the Net Settlement Funds resulting from that Settlement(s) pursuant to the Distribution Order.

[6]  *See* BAWAG Stipulation ¶¶ 14, 28(f); Sandler O'Neill Stipulation ¶¶ 9, 23(f); Underwriters Stipulation ¶¶ 9, 23(f); Audit Committee and THL Stipulation ¶¶ 2.4, 5.7; Officer Defendants Stipulation ¶¶ 9, 23(g); Grant Thornton Stipulation ¶¶ 9, 26(g).

[7]  The only remaining claims GCG is continuing to process are those received for the first time on or after March 1, 2011, *i.e.*, those claims received for the first time in connection with the Grant Thornton and the Officer Defendants Settlements as to which there was a claim filing deadline of March 15, 2011.  Cirami Decl. ¶ 5.

Allocation), GCG mailed a rejection letter to the claimant describing the defect(s) with the Proof of Claim and, if the defect was curable, stating what was necessary to complete the Proof of Claim.  Cirami Decl. ¶ 29.  GCG also mailed rejection letters to each claimant whose Proof of Claim was determined to be partially deficient (for example, if the claimant was missing documentation for part of the Proof of Claim, or did not supply all transactional information), advising the claimant of the defect(s) in the Proof of Claim, stating what was necessary to cure such defect(s), and informing the claimant that, unless the defect(s) were cured, the Proof of Claim would only be eligible to the extent it was complete and calculated to a Recognized Claim.  *Id*. ¶ 31.  Consistent with the terms of the Stipulations, all rejection letters also specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim.[8]  *Id*. ¶ 32.  Copies of the types of letters sent to notify claimants of the deficiencies in or ineligibility of their Proofs of Claim are attached as an exhibit to the Cirami Declaration.  *See* Cirami Decl. ¶ 32 and Exhibit A thereto.

GCG carefully reviewed claimants' responses to rejection letters and worked with claimants to resolve deficiencies where possible.  Cirami Decl. ¶¶ 30, 34.  After all responses to deficiency letters were received and processed, GCG called claimants with still-deficient Proofs of Claim to assist them in curing the deficiencies.  *Id.* ¶¶ 33-37.  This process was extremely successful and a very large percentage of claimants who submitted Proofs of Claim with curable deficiencies are now eligible to participate in the Settlements.  *Id*. ¶ 28.

---

[8] *See* BAWAG Stipulation ¶ 28(e); Sandler O'Neill Stipulation ¶ 23(e); Underwriters Stipulation ¶ 23(e); Audit Committee and THL Stipulation ¶ 5.6(e); Officer Defendants Stipulation ¶ 23(f); Grant Thornton Stipulation ¶ 26(f).

As set forth in the Cirami Declaration, of the 7,880 Proofs of Claims that GCG has completed processing, GCG has determined that 3,190 are acceptable in whole or in part (Cirami Decl. ¶ 44), and that 4,690 should be wholly rejected because they are ineligible, wholly deficient, or have no Recognized Claim when calculated in accordance with the Court-approved Plan of Allocation (Cirami Decl. ¶ 45).

The Court-ordered deadline for filing of Proofs of Claim with respect to the Earlier Settlements was November 9, 2010 and the Court-ordered deadline for filing of Proofs of Claim with respect to the Grant Thornton and Officer Defendants Settlements was March 15, 2011. Cirami Decl. ¶ 6. Because claims administration with respect to the Earlier Settlements was ongoing through the March 15, 2011 claim filing deadline for the Later Settlements, Proof of Claim forms postmarked by the March 15, 2011 deadline were deemed timely with respect to all of the Settlements. *Id*. ¶¶ 9, 38. The 7,880 fully processed Proofs of Claim also include Proofs of Claim that were postmarked after March 15, 2011, which, but for the late submission, are otherwise eligible in whole or in part. Cirami Decl. ¶¶ 38, 44 and Exhibit B-2 thereto. When the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the Net Settlement Funds solely because it was submitted after the Court-approved claims filing deadline, if it was submitted while other claims were still being processed. The Court has discretion to accept Claims submitted after the filing deadlines under the terms of the Plan of Allocation and the Stipulations.[9]

---

[9] *See* Plan of Allocation ¶ 7 ("*Unless the Court otherwise orders*, any Class Member who fails to submit a Claim Form postmarked no later than November 9, 2010 shall be forever barred from receiving payments pursuant to the Settlements . . .") (emphasis added); Updated Plan of Allocation ¶ 7 ("*Unless the Court otherwise orders*, any Class Member who fails to submit a Claim Form postmarked no later than March 15, 2011 shall be forever barred from receiving payments pursuant to the Current Settlements . . .") (emphasis added); *see also* BAWAG Stipulation ¶ 28(b); Sandler O'Neill Stipulation ¶ 23(b); Audit Committee and THL Stipulation

Lead Plaintiffs request that the Court approve GCG's administrative determinations accepting and rejecting claims as set forth in the Cirami Declaration.

## CLAIMS-IN-PROCESS

As described above, GCG has spent a significant amount of time working with claimants to complete their claims. GCG has completed processing of the claims that were submitted by the November 9, 2010 deadline for the Earlier Settlements,[10] and has also completed processing many of the claims submitted after the initial deadline but before the March 15, 2011 deadline for the Later Settlements. GCG has not yet completed its review of the Proofs of Claim received on or after March 1, 2011. Cirami Decl. ¶ 39. Many of the Proofs of Claim submitted during this period are in good standing and, therefore, are included as valid Proofs of Claim; the remaining are deficient or were submitted by persons or entities that are not eligible Class Members. The processing of those deficient claims (which includes providing adequate time for claimants to respond to rejection letters mailed to them) has not yet been completed. *Id*. In order to avoid a delay in the distribution to the almost 3,200 claimants whose claims have been completely processed and are recommended for approval, Co-Lead Counsel have proposed, and GCG agrees, that an Initial Distribution be made to those whose claims have been completely processed and are recommended for approval. To the extent that that any of the Claims-in-Process are ultimately determined to be eligible to participate in the Settlements, they will be

---

¶ 5.6(b); Underwriters Stipulation ¶ 23(b); Officer Defendants Stipulation ¶ 23(c); Grant Thornton Stipulation ¶ 26(c).

[10] There are four claims that, during GCG's final review process, were identified as duplicates of claims that are being recommended for payment. As required, GCG has notified the claimants that the duplicate claims will be recommended for rejection. As the "deficiency" process with respect to these four claims has not been completed, they are included in the Claims-in-Process. Cirami Decl. ¶ 39 n.5.

paid from the Reserve that is proposed to be established as part of the distribution plan.[11]  *See* Cirami Decl. ¶ 49(e)(ii).  GCG's recommendations as to the Claims-in-Process will be presented to the Court in a subsequent motion when processing of those claims has been completed.[12]

## DISTRIBUTION OF THE NET SETTLEMENT FUNDS

Lead Plaintiffs[13] respectfully request that the Court adopt the Distribution Plan for the Net Settlement Funds set forth in the Cirami Declaration which would, among other things: (a) authorize an Initial Distribution of the Net Settlement Funds to the claimants listed in Exhibits B-1 and B-2 to the Cirami Declaration; (b) provide for a distribution to any of the Claims-in-Process determined to be eligible, following a motion to the Court for approval of such claims; and (c) provide for a Second Distribution (and, if necessary, subsequent distributions) of any funds remaining after the Initial Distribution and Claims-in-Process Distribution.  *See* Cirami Decl. ¶ 49.

In the Initial Distribution, GCG will determine a Distribution Amount for each Authorized Claimant based on the sum of the Authorized Claimant's *pro rata* share of the

---

[11] As noted above, the Reserve will be created by holding back part of the Government Restitution Amount.

[12] As noted above, claimants were given the opportunity to request judicial review of GCG's administrative determinations to reject their claim in whole or in part.  There are currently four claims with outstanding requests for judicial review.  Because it is possible that there may be additional disputed claims among the Claims-in-Process, all claims as to which judicial review is requested will be presented to the Court as part of the request for approval of the Claims-in-Process Distribution.

[13] Under the terms of the Stipulations, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Funds.  *See* BAWAG Stipulation ¶¶ 19, 25, 27; Sandler O'Neill Stipulation ¶¶ 14, 20, 22; Underwriters Stipulation ¶¶ 14, 20, 22; Audit Committee and THL Stipulation ¶¶ 2.7, 5.2; Officer Defendants Stipulation ¶¶ 14, 20, 22; Grant Thornton Stipulation ¶¶ 14, 23, 25.

Section 11 Fund and his, her or its *pro rata* share of the Section 10(b) Fund.  *See* Cirami Decl. ¶ 49(b).  As provided for in the Court-approved Plan of Allocation, Authorized Claimants whose Distribution Amount is less than $20 will receive no payment.  *See* Cirami Decl. ¶ 49(c); Plan of Allocation ¶ 24.  Authorized Claimants whose Distribution Amount is at least $20 but less than $100 will receive their full Distribution Amount in the Initial Distribution ("Claims Paid in Full").  *See* Cirami Decl. ¶ 49(e).  Authorized Claimants whose Distribution Amount is $100 or more will receive 95% of their Distribution Amount in the Initial Distribution, with the remaining 5% retained in escrow to create a Reserve from which to pay any Claims-in-Process that ultimately are determined to be eligible to participate in the Settlements and for any other contingencies that may arise.  *See id*.

When GCG has completed the processing of the Claims-in-Process, Co-Lead Counsel will move the Court for approval of GCG's determinations with respect to those claims (including those claims as to which judicial review has been requested), and upon entry of an order approving claims for payment, GCG will make the Claims-in-Process Distribution to these claimants using the same proration factors that were calculated in the Initial Distribution, thereby bringing those claimants into parity with the claimants approved for payment pursuant to the current motion.  *See* Cirami Decl. ¶ 49(h).

### **DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE**

In order to encourage Authorized Claimants to cash their distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiffs propose that the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]."  In an effort to have as many Authorized Claimants as possible cash their checks, GCG will follow up

with Authorized Claimants who initially fail to cash their distribution checks. *See* Cirami Decl. ¶ 49(f) n.7.

Consistent with the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Funds after the Initial Distribution and the Claims-in-Process Distribution, GCG will conduct a Second Distribution pursuant to which any balance remaining in the Net Settlement Funds after deducting GCG's costs and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the costs of the Claims-in-Process Distribution and the estimated costs of such Second Distribution), and after the payment of any estimated taxes and the costs of preparing appropriate tax returns, shall be re-distributed to Authorized Claimants from the Initial and Claims-in-Process Distributions who (1) were not Claims Paid in Full, (2) cashed their distribution payment, and (3) are entitled to at least $20 from the redistribution based on their *pro rata* share of the remaining funds. *See* Cirami Decl. ¶ 49(i). If cost effective, subsequent distributions of funds remaining in the Net Settlement Funds will take place in six-month intervals. *Id*. at ¶ 49(j)(i). At such time as GCG and Co-Lead Counsel determine that further re-distribution is not cost-effective, the balance of the Net Settlement Funds, after payment of any unpaid costs or fees and taxes, shall be donated to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Co-Lead Counsel subject to approval by the Court. *Id*. at ¶ 49(j)(ii).

## **FEES AND EXPENSES OF CLAIMS ADMINISTRATOR**

In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator, GCG was responsible for, among other things, mailing and publishing notice to the Class, processing the claims, and allocating and distributing the Net Settlement Funds to Authorized Claimants. As set forth in the Cirami Declaration, GCG's fees and expenses for its

work performed on behalf of the Class (and estimated to be performed in connection with the Initial Distribution) total $598,778.19.[14]  Cirami Decl. ¶ 48.  To date, GCG has received payments totaling $132,886.47.[15]  *Id*.  Accordingly, there is a balance due to GCG of $465,891.72, which amount includes GCG's anticipated fees and expenses for the Initial Distribution.  *Id.*  Lead Plaintiffs respectfully request that the Court approve payment of GCG's fees and expenses from the Settlement Funds.

RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, be released and discharged from any and all claims arising out of such involvement.  Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds from any and all

---

[14] As set forth in the Cirami Declaration, $247,779.70 or 41.38%, of GCG's $598,778.19 in fees and costs were for printing, postage, publishing and nominee fees in connection with the mailings.  Cirami Decl. ¶ 48.

[15] Under the terms of the Stipulations, Co-Lead Counsel were authorized to pay the reasonable costs and expenses incurred in identifying and notifying Class Members and administering the settlements without further order of the Court.  *See* BAWAG Stipulation ¶ 16; Sandler O'Neill Stipulation ¶ 11; Underwriters Stipulation ¶ 11; Officer Defendants Stipulation ¶ 11; Grant Thornton Stipulation ¶ 11; *see also* Audit Committee and THL Stipulation ¶ 2.5 (Co-Lead Counsel authorized to pay up to $250,000 in actual Notice and Administrative Expenses prior to the Effective Date, and all reasonable costs and expenses after the Effective Date).

claims arising out of such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Funds, from making any further claims against the Net Settlement Funds, Lead Plaintiffs, Co-Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Co-Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds beyond the amount allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that their Motion for Approval of Distribution Plan be approved and the proposed Order Approving Distribution Plan be entered.

Dated:  New York, New York  
       April 18, 2011

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

    /s/ Megan D. McIntyre  
Stuart M. Grant  
James J. Sabella  
Brenda F. Szydlo  
485 Lexington Avenue, 29th Floor  
New York, NY 10017  
Telephone:  (646) 722-8500  
Facsimile:  (646) 722-8501

    - and -

Megan D. McIntyre  
Christine M. Mackintosh  
1201 North Market Street  
Wilmington, DE 19801  
Telephone:  (302) 622-7000  
Facsimile:  (302) 622-7100

**BERNSTEIN LITOWITZ BERGER  
& GROSSMANN LLP**

    /s/ Salvatore J. Graziano  
Max W. Berger  
Salvatore J. Graziano  
John C. Browne  
Jeremy P. Robinson  
1285 Avenue of the Americas  
New York, NY 10019  
Telephone:  (212) 554-1400  
Facsimile:  (212) 554-1444

#536453.6