UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                              :
                                              :
In re REFCO, INC. SECURITIES LITIGATION       :    05 Civ. 8626 (JSR)
                                              :
                                              :
------------------------------------------------------------ x

## LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF PAYMENT OF ELIGIBLE CLAIMS-IN-PROCESS, LATE ADJUSTED CLAIMS, AND LATE SUBMITTED CLAIMS

Lead Plaintiffs RH Capital Associates LLC and Pacific Investment Management Company LLC, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submit this memorandum in support of their motion for entry of the [Proposed] Order Approving Payment of Eligible Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims (the "Claims-in-Process Distribution Order") in the above-captioned action (the "Action").[1] While the vast majority of the Settlement Class members who submitted eligible claims have already received distributions from the Net Settlement Funds, there were certain claims that were still being processed at the time the prior distribution was approved by the Court (the "Claims-in-Process"). The processing of those Claims-in-Process is now complete. Accordingly, as contemplated by the Court's May 2, 2011 Order authorizing the prior distribution (the "Initial Distribution Order"), Lead Plaintiffs hereby seek the Court's approval of the Claims Administrator's determinations regarding the Claims-in-Process, so that a distribution can be

---

[1] Unless otherwise indicated, all terms with initial capitalization used herein shall have the meanings ascribed to them in the accompanying Declaration of Stephen J. Cirami In Support Of Lead Plaintiffs' Motion For Approval of Payment of Eligible Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims ("Cirami Declaration" or "Cirami Decl.").

made to those claimants whose Claims-in-Process have been deemed eligible for payment, thus bringing those claimants into parity with those who received the earlier distribution.

Additionally, Lead Plaintiffs seek the Court's approval to pay (i) certain claims that were previously rejected in whole or in part pursuant to the Initial Distribution Order, but whose deficiencies were cured by the submission of additional documentation after entry of the Initial Distribution Order ("Late Adjusted Claims"), and (ii) certain claims that were submitted after the filing of Lead Plaintiffs' previous distribution motion (and thus after the claims submission deadline) but that are otherwise eligible for payment ("Late Submitted Claims").

## BACKGROUND

Between 2007 and 2010, Lead Plaintiffs entered into six separate settlements with defendants in the Action, all of which were approved by the Court (collectively, the "Settlements").[2] Together, these Settlements represent a complete resolution of all claims brought in this consolidated Action that were not dismissed by the Court as a result of the defendants' motions to dismiss. Pursuant to the Settlements, the defendants collectively deposited $367.3 million into escrow for the benefit of the Settlement Class. Additionally, Lead Plaintiffs and Lead Counsel have recovered more than $57 million in Restitution Funds for the benefit of the Settlement Class.

---

[2] The Settlements were with (i) BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, entered on February 13, 2007, (ii) Sandler O'Neill & Partners L.P., entered on October 10, 2008, (iii) the Settling Underwriter Defendants, entered on April 20, 2010, (iv) Thomas H. Lee and affiliates and the members of Refco's audit committee, entered on March 29, 2010 and amended on May 3, 2010, (v) Joseph J. Murphy, Dennis A. Klejna and William Sexton, entered on September 30, 2010, and (vi) Grant Thornton LLP, entered on October 18, 2010. The Settlements described in (i), (ii), (iii) and (iv) above are referred to herein as the "Earlier Settlements," and the Settlements described in (v) and (vi) above are referred to as the "Later Settlements."

2

On April 18, 2011, Lead Plaintiffs filed a motion (the "Initial Distribution Motion") seeking authorization to distribute to eligible Settlement Class members the net proceeds from the Settlements, as well as a portion of the Restitution Funds. At that time, the deadlines for Settlement Class members to submit proof of claim forms had expired for all of the Settlements, the Claims Administrator had completed the processing of all but four claims submitted in connection with the four Earlier Settlements, and the Claims Administrator had partially completed the processing of claims submitted in connection with the two Later Settlements. The only claims that had been received but not fully processed at the time of the Initial Distribution Motion were (i) the four claims submitted in connection with the Earlier Settlements, which the Claims Administrator had rejected and as to which the claimants had requested judicial review,[3] and (ii) 796 claims that had been submitted for the first time in connection with the Later Settlements (collectively, the "Claims-in-Process").

In its May 2, 2011 Order granting the Initial Distribution Motion, this Court: (i) approved the Claims Administrator's determinations with regard to the acceptance and rejection of the claims that had already been submitted and fully processed (the "Initial Claims"); (ii) authorized a distribution of the net Settlement proceeds and a portion of the Restitution Funds to the claimants whose Initial Claims had been accepted (the "Initial Distribution"); (iii) instructed Lead Counsel to file a motion for approval of the Claims Administrator's determinations regarding the Claims-in-Process, once the processing of those claims was completed; and (iv) directed that upon entry of an order approving eligible Claims-in-Process for payment, the

---

[3] As explained in the Initial Distribution Motion, given the possibility that additional requests for judicial review would be made in connection with other Claims-in-Process, these disputed claims were not presented for resolution by the Court in the Initial Distribution Motion. Instead, presentation of these disputes was deferred until the processing of all Claims-in Process was completed. Those disputes are addressed *infra*.

3

Claims Administrator shall make a distribution to those claimants (the "Claims-in-Process Distribution") that brings them into parity with the claimants who received the Initial Distribution. *See* Initial Distribution Order ¶¶ 3(a), (b), (c), (f).

The Initial Distribution has been completed, with checks totaling $337,783,825.62 having been sent to 3,187 claimants and $1,371,722.05 having been sent to the Refco Private Actions Trust ("PAT") between May 27, 2011 and August 5, 2011.[4]  Cirami Decl. ¶ 2.  The payments to the claimants include 3,085 payments that were issued on May 27, 2011, and 102 payments that were delayed as a result of the motion filed by the PAT to modify the plan of distribution with respect to certain payments that had allegedly been assigned to it. *Id.*  The funds that were distributed in the Initial Distribution included the entire net proceeds from all six Settlements (totaling approximately $313.3 million) and approximately $25.9 million of the Restitution Funds.  Another $17.85 million in Restitution Funds was held in reserve (the "Reserve") to pay any Claims-in-Process that were later approved for payment by the Court.  Subsequent to entry of the Initial Distribution Order, approximately $13.66 million in additional Restitution Funds have been received from the government and have been added to the Reserve, bringing the total balance in the Reserve to approximately $31.5 million.

### THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S RECOMMENDATIONS REGARDING THE ACCEPTANCE AND REJECTION OF CLAIMS-IN-PROCESS

In total, there were eight hundred (800) Claims-in-Process at the time of the Initial Distribution Motion. Cirami Decl ¶ 5.  The Proofs of Claim that were initially submitted with respect to these Claims-in-Process were deficient for one or more reasons. *Id.*  The Claims

---

[4] To date, Initial Distribution checks totaling more than $332.7 million, or over 98% of the amount distributed, have been cashed.  The Claims Administrator is following up on all uncashed checks. Cirami Decl. ¶ 3.

4

Administrator mailed rejection letter to the claimants describing the defect(s) with the Proof of Claim and, if the defect was curable, stating what was necessary to complete the Proof of Claim. Cirami Decl. ¶ 6. All rejection letters specifically advised the claimants that they had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. *Id.*

As set forth in the Cirami Declaration, after completing the processing of the Claims-in-Process, the Claims Administrator has determined that five (5) of those claims are eligible for payment. *See* Cirami Decl. ¶ 6.[5] Lead Plaintiffs respectfully request that the Court approve the Claims Administrator's acceptance of these claims, which are listed on Exhibit A-1 to the Cirami Declaration along with their corresponding Distribution Amounts, totaling $77,457.52.

The Claims Administrator has determined that the other 795 Claims-in-Process should be wholly rejected because they have deficiencies that were not cured, despite notice of those deficiencies being given to the claimants. *See* Cirami Decl. ¶ 6. The claimants who submitted these claims have been notified of the rejection of their claims, and none have requested judicial review. All of the claims that have been recommended for rejection are listed on Exhibit A-2 to the Cirami Declaration, along with the reasons for their rejection.

## THE COURT SHOULD PERMIT DISTRIBUTIONS TO BE MADE TO CLAIMANTS WHO SUBMITTED OTHERWISE ELIGIBLE CLAIMS AFTER THE FILING OF THE INITIAL DISTRIBUTION MOTION

The Court-ordered deadline for filing of Proofs of Claim with respect to the Later Settlements was March 15, 2011. *See* Cirami Decl. ¶ 9. In the Initial Distribution Motion, Lead Plaintiffs requested – and the Court granted – leave to treat late-submitted but otherwise valid

---

[5] These eligible claims include four claims that were referenced in the Initial Distribution Motion as being subject to requests by the claimants for judicial review. After further correspondence with those claimants, the Claims Administrator, in consultation with Lead Counsel, has determined that these claims are eligible for payment.

Initial Claims as eligible claims. Accordingly, the Initial Distribution included distributions to otherwise eligible claimants whose claims were submitted after March 15, 2011.

Subsequent to the filing of the Initial Distribution Motion, the Claims Administrator received another seventy-five (75) claims of which forty-one (41) claims would be eligible in whole or in part, but for their late submission (the "Late Submitted Claims").[6] *Id.* ¶ 9. If approved, the total payments attributable to the Late Submitted Claims would be $4,703,698.76. *Id.* It is respectfully submitted that, as it did in the Initial Distribution Order, the Court should permit payment of those claims. Because the processing of the Claims-in-Process was still ongoing when the Late Submitted Claims arrived, the late submission of these claims did not delay the distribution in any way. Moreover, the funds in the Reserve are more than adequate to pay these claims.

**THE COURT SHOULD MODIFY ITS INITIAL DISTRIBUTION ORDER TO PERMIT DISTRIBUTIONS TO BE MADE WITH RESPECT TO LATE ADJUSTED CLAIMS**

In the Initial Distribution Order, the Court approved the Claims Administrator's recommendation to reject certain claims that had been deemed ineligible. Subsequent to the entry of the Initial Distribution Order, the Claims Administrator received additional documentation that cures the deficiencies in nine (9) of the claims that had been rejected, either in whole or in part ("Late Adjusted Claims"). Cirami Decl. ¶ 8. If approved for payment by the Court, these Late Adjusted Claims would be entitled to additional Initial Distribution payments totaling $3,018,490.99. *Id.* Because late claims were accepted in the Initial Distribution Order and additional late claims are being recommended for payment on this motion, and because there

---

[6] The forty-one (41) late but otherwise eligible claims are listed on Exhibit C-1 to the Cirami Declaration. The remaining thirty-four (34) claims received after the filing of the Initial Distribution Motion have been found ineligible for payment. Cirami Decl. ¶ 9. Those claims are listed on Exhibit C-2 to the Cirami Declaration.

6

are ample funds in the Reserve to pay the additional amounts, Lead Plaintiffs respectfully request that the Court modify its Initial Distribution Order with respect to the Late Adjusted Claims identified on Exhibit B to the Cirami Declaration, and authorize payments to be made with respect to those claims in the amounts set forth in that exhibit.

### CLAIMS-IN-PROCESS, LATE ADJUSTED CLAIMS, AND LATE SUBMITTED CLAIMS THAT ARE SUBJECT TO ALLEGED ASSIGNMENTS TO THE REFCO PRIVATE ACTIONS TRUST

The Initial Distribution Order provides that "upon entry of an order approving [Claims-in-Process] for payment, [the Claims Administrator] shall make a distribution to those claimants … that will bring them in parity with the claimants approved for payment pursuant to [the Initial Distribution Order]." Docket No. 793, at ¶ 3(g). However, subsequent to the entry of the Initial Distribution Order, and upon motion by the Trustee of the Refco Private Actions Trust ("PAT"), the order was modified to defer payments of claims that were allegedly subject to assignments to the PAT. The Claims Administrator has determined that seven (7) of the eligible Late Adjusted Claims and Late Submitted Claims (Claim Nos. 5361, 8237, 9236, 9237, 9250, 1002063 and 1002112) appear on the list of persons or entities that the Trustee claims have assigned a portion of their recovery in this Action to the PAT. Lead Counsel propose to follow the same procedures with respect to those claims as were established by the Court in its Order Modifying Distribution Plan dated June 2, 2011 (Docket No. 800). Specifically, the Claims Administrator will defer payment of these claims until the Trustee has notified the claimants that a portion of their net settlement proceeds are subject to an assignment to the PAT, and until those claimants have a 30-day period in which to serve written objections. If any such objections cannot be resolved by counsel for the PAT Trustee, the Trustee shall submit them to the Court for resolution.

## THE COURT SHOULD APPROVE THE SAME PROCEDURES AS IN THE INITIAL DISTRIBUTION ORDER WITH RESPECT TO CLAIMANTS WHO FAIL TO CASH THEIR DISTRIBUTION CHECKS

In order to encourage claimants to cash their distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, Lead Plaintiffs propose that the checks to be issued with respect to the eligible Claim-in-Process, Late Submitted Claims, and Late Adjusted Claims bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." The same notation was made on the Initial Distribution checks, per the Initial Distribution Order. In an effort to have as many claimants as possible cash their distribution checks, the Claims Administrator will follow up with those who initially fail to cash their checks. *See* Cirami Decl. ¶ 12.

To allow for finality of the distribution process, the Court should direct that claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlements and the Restitution Funds, and that the funds allocated to all such stale-dated checks will be available for re-distribution on a *pro rata* basis to the other eligible claimants. The Initial Distribution Order contains this provision, and further provides for a "Second Distribution" – to occur after the Claims-in-Process Distribution – whereby the funds allocated to uncashed checks will be distributed, along with the balance of the Reserve, to all Authorized Claimants who (i) cashed their Initial Distribution and/or Claims-in-Process Distribution checks, (ii) have not already received payment in full, and (iii) would receive at least $20 in the redistribution. *See* Initial Distribution Order ¶ 3(g). This Second Distribution to all such Authorized Claimants will not require further Court approval as it is already provided for in the Court's Initial Distribution Order.

# THE COURT SHOULD APPROVE PAYMENT OF THE CLAIMS ADMINISTRATOR'S UNPAID FEES AND EXPENSES RELATING TO THE CLAIMS-IN-PROCESS

The Claims Administrator was responsible for, among other things, mailing and publishing notice to the Settlement Class, processing the claims, and allocating and distributing the settlement proceeds to eligible claimants. As set forth in the Cirami Declaration, the Claims Administrator's unreimbursed fees and expenses for its work performed on behalf of the Settlement Class (and estimated to be performed in connection with the Claims-in-Process Distribution) total $36,027.85. Cirami Decl. ¶ 11 & Ex. D. These fees and expenses relate to the work performed in (a) handling Class Member communications related to the Initial Distribution, much of which was related to claimants requesting check reissues or explanations of their payments, and (b) preparation for the Claim-in-Process Distribution including, among other things, preparing final reports and this Declaration in consultation with Co-Lead Counsel. Lead Plaintiffs respectfully request that the Court approve payment of these fees and expenses from the Reserve.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that their Motion to Approve Payment of Eligible Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims be approved and the proposed Order Approving Payment of Eligible Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims be entered.

Dated:  New York, New York
       September 22, 2011

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

   /s/ Megan D. McIntyre
Stuart M. Grant
James J. Sabella
Brenda F. Szydlo
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone:  (646) 722-8500
Facsimile:  (646) 722-8501

- and -

Megan D. McIntyre
Christine M. Mackintosh
1201 North Market Street
Wilmington, DE 19801
Telephone:  (302) 622-7000
Facsimile:  (302) 622-7100

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

   /s/ Salvatore J. Graziano
Max W. Berger
Salvatore J. Graziano
John C. Browne
Jeremy P. Robinson
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

#577658