UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re REFCO, INC. SECURITIES LITIGATION  :  05 Civ. 8626 (JSR)

---

DECLARATION OF STEPHEN J. CIRAMI IN
SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF PAYMENT OF ELIGIBLE CLAIMS-IN-PROCESS,
LATE ADJUSTED CLAIMS, AND LATE SUBMITTED CLAIMS

STEPHEN J. CIRAMI declares as follows:

1. I am the Senior Vice President of Operations for The Garden City Group, Inc. ("GCG"). GCG was retained by Co-Lead Counsel in connection with Lead Plaintiffs' settlements with defendants (the "Settlements")[1] in this Action. GCG presents this Declaration in support of Lead Plaintiffs' Motion for Approval of Payment of Eligible Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims. I have personal knowledge of the facts stated herein.

**STATUS OF THE INITIAL DISTRIBUTION OF THE NET SETTLEMENT FUNDS**

2. Pursuant to terms of the Court's May 2, 2011 Order Approving Distribution Plan (the "Initial Distribution Order"), GCG issued 3,187 payments in the aggregate amount of $337,783,825.62 to Authorized Claimants between May 27, 2011 and August 5, 2011 (collectively, the "Initial Distribution"). Of these payments, 3,085 were issued on May 27, 2011 and 102 were delayed as a result of the motion filed by the Refco Private Action Trust ("PAT") seeking to modify the plan of distribution with respect to certain payments that had allegedly been assigned to the PAT. The Court entered an Order on July 27, 2011 resolving all remaining

---

[1] Unless indicated otherwise, all terms with initial capitalization shall have the same meanings ascribed to them in the Stipulations and in the Declaration of Stephen J. Cirami In Support of Lead Plaintiffs' Motion for Approval of a Distribution Plan (the "Initial Cirami Declaration") previously submitted to this Court.

issues concerning the PAT assignments, and all delayed payments were issued on or before August 5, 2011, including a $1,371,722.05 wire payment to the PAT.

3. To date, payments for total proceeds of $332,795,210.50 have been cashed, which is over 98% of the amount distributed in the Initial Distribution. GCG continues to perform its due diligence and follow-up on all uncashed payments. This process is ongoing at the time of this Declaration.

4. Pursuant to the Initial Distribution Plan, a reserve in the amount of approximately 5% of the Net Settlement Funds was established for Claims-In-Process that were ultimately determined to be eligible to participate in the Settlements if approved by the Court, as well as for other contingencies that may arise (the "Reserve").

## CLAIMS-IN-PROCESS

5. At the time of the Initial Distribution, there were 800 claims that were deficient for one or more reasons and for which the processing had not been completed, including the four claims with outstanding requests for judicial review described in the Initial Cirami Declaration (collectively, the "Claims-in-Process"). As further described in the Initial Cirami Declaration, these claims required additional time to complete, and as a result, were withheld from participation in the Initial Distribution so as not to delay distribution to Authorized Claimants.[2] If any of these claims were ultimately determined eligible to participate in the Settlements, they

---

[2] These claims were submitted after the November 9, 2010 deadline for the submission of claims established in connection with the Notices and Proof of Claim forms disseminated with respect to the settlements achieved with the Audit Committee and THL and the settlement achieved with the Underwriters that were approved by the Court on October 28, 2010. All but a few of these claims were submitted prior to the March 15, 2011 claim-filing deadline established in connection with the settlements achieved with Grant Thornton LLP and the Officer Defendants that were approved by the Court on March 22, 2011.

would be included in a Claims-In-Process Distribution as described in the Initial Cirami Declaration and as authorized in the Court's Initial Distribution Order.

6. The processing of the 800 Claims-in-Process is now complete and five (5) Claims-in-Process are eligible for payment[3] and 795 Claims-in-Process have been rejected. GCG mailed rejection letters to the claimants whose Claims-in-Process were rejected, describing the defect(s) with their Proof of Claim forms and, if the defect was curable, stating what was necessary to complete the Proof of Claim. All rejection letters specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. Of the 795 Claims-in-Process that have been rejected, there are no outstanding requests for judicial review of the rejection.

7. If the Court approves payment of the eligible Claims-In-Process, they would be eligible for payments totaling $77,457.52. Attached hereto as Exhibit A-1 is a report of the eligible Claims-in-Process and their corresponding Recognized Loss Amounts. Also, attached hereto as Exhibit A-2 is a list of 795 rejected Claims-in-Process, showing the reason why each claim was rejected.

## LATE ADJUSTED CLAIMS

8. Since the entry of the Initial Distribution Order, GCG has received additional documentation for nine (9) claims that had been rejected in whole or in part in the Initial Distribution Order ("Late Adjusted Claims"). If the Court permits the consideration of the

---

[3] Four claims that are now recommended for payment (claim nos. 5436, 1010951, 1010952, and 1011991) were previously in dispute and the claimants had requested judicial review. However, these claims have now been resolved and are included on exhibit A-1 as eligible Claims in Process, described in paragraph 7.

additional documentation, these Late Adjusted Claims would be entitled to adjusted Initial Distribution payments totaling $3,018,490.99.[4] Those payments, together with the proposed payments described in ¶ 9 below, are referred to herein as the "Catch-Up Payments." Attached hereto as Exhibit B is a list of the nine (9) Late Adjusted Claims and their corresponding adjusted Recognized Losses and Catch-Up Payments.

### LATE SUBMITTED CLAIMS

9. GCG also received 75 claims that were submitted after the Initial Distribution (and, therefore, after the March 15, 2011 claims submission deadline established in connection with the settlements achieved with Grant Thornton LLP and the Officer Defendants) (the "Late Submitted Claims"). In the Initial Distribution Order, the Court approved payment of otherwise eligible claims that were submitted after the claims submission deadline. If the Court likewise approves payment of these additional otherwise eligible Late Submitted Claims, 41 of the Late Submitted Claims would be entitled to an award and 34 Late Submitted Claims would be rejected as ineligible for reasons other than lateness.[5] If the Court approves payment of the 41 otherwise eligible Late Submitted Claims, GCG will apply the same proration factors used in the Initial Distribution, resulting in total Catch-Up Payments to these claimants of $4,703,698.76. Attached hereto as Exhibit C-1 is a list of the 41 otherwise eligible Late Submitted Claims and

---

[4] Where the claim had previously been rejected in the entirety, this would be an initial payment; with respect to other claims, the payment would be in addition to what was received in the Initial Distribution.

[5] Claimants who or which submitted the rejected late claims were given the opportunity to cure deficiencies in their claims, if the reason for rejection was curable. Additionally, all of these claimants were afforded the opportunity to request judicial review of the rejection of their claims.

their corresponding Recognized Losses and Catch-Up Payments. Also, attached hereto as Exhibit C-2 is a list of the 34 rejected Late Submitted Claims and the reasons for their rejection.

## CLAIMANTS SEEKING JUDICIAL REVIEW OF THEIR PROOFS OF CLAIM

10. As stated in Paragraph 40 of the Initial Cirami Declaration, a total of 98 claimants requested judicial review of their claims. GCG was able to resolve 94 of these requests prior to the Initial Distribution by contacting the claimants and explaining the administrative determination to them. As a result, these 94 claimants withdrew their requests for judicial review and the remaining four disputed claims were included in the population of Claims-In-Process to be presented to the Court as part of the distribution contemplated by the accompanying motion. However, since the Initial Distribution, the four remaining disputes have been resolved and these claims are being recommended for payment. These claims are included on Exhibit A-1, which lists the Claims-in-Process that are being recommended for payment.

## GCG'S FEES AND EXPENSES

11. Attached hereto as Exhibit D is GCG's invoice for $36,027.85. This invoice covers GCG's fees and expenses for work performed that was not covered by the invoices submitted to the Court as Exhibit C to the Initial Cirami Declaration. Specifically, the attached invoice covers the work performed in (a) handling Class Member communications related to the Initial Distribution, much of which was related to claimants requesting check reissues or explanations of their payments, and (b) preparation for the Supplemental Distribution including, among other things, preparing final reports and this Declaration in consultation with Co-Lead Counsel, and resolving the Disputed Claims. This invoice also includes an estimate of additional

fees and expenses required to conduct this distribution as contemplated by the accompanying motion (the "Claims-in-Process Distribution").

## DISTRIBUTION PLAN FOR THE RESERVE FUNDS

12. Should the Court concur with GCG's determinations concerning Claims-in-Process, Late Adjusted Claims, and Late Submitted Claims, GCG will pay the fifty-five (55) now eligible claims from the Reserve and continue with the follow-up of uncashed payments from the Initial Distribution and the distribution described herein. Further, GCG will continue with the Distribution Plan previously approved in the Initial Distribution Order.

13. Of the claims that are recommended for payment, GCG has determined that seven (7) claimants (Claim Nos. 5361, 8237, 9236, 9237, 9250, 1002063, 1002112) appear on the list provided by the Trustee of the Refco Private Actions Trust as persons or entities that assigned a portion of their recovery in this Action to the Private Actions Trust. To the extent that these claims are approved for payment, GCG proposes to follow the procedures established by the Court in its Order Modifying Distribution Plan dated June 2, 2011 (Docket No. 800), which were used in connection with the Initial Distribution. Specifically, GCG will defer payment of these claims until the Trustee has notified the claimants that a portion of their net settlement proceeds are subject to an assignment to the Private Actions Trust, and until those claimants have had an opportunity to object.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Lake Success, New York on September 21, 2011.

_____
STEPHEN J. CIRAMI